# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 5, 2009 Session

## MARCUS WARD v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 04-06910     Paula Skahan, Judge**

---

**No. W2007-01632-SC-R11-PC - Filed July 7, 2010**

---

In this post-conviction case, the issue we review is whether the defendant's plea of guilty to aggravated sexual battery was knowingly, intentionally, and voluntarily made when the trial court did not advise the defendant of the following consequences of his guilty plea: (1) mandatory registration as a sexual offender, and (2) a mandatory sentence of community supervision for life in addition to his incarceration. We hold that the trial court was not required to advise the defendant of the requirement of sex offender registration because it is a remedial and regulatory measure, and therefore a collateral consequence of the guilty plea. We further hold that the trial court was required to advise the defendant of the mandatory sentence of lifetime community supervision because it is a punitive and direct consequence of the guilty plea. Because the trial court failed to ensure that the defendant was informed of the lifetime supervision consequence, we hold that his guilty plea to aggravated sexual battery was not knowingly, intentionally, and voluntarily entered. Accordingly, this case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., and CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Ryan B. Feeney, Selmer, Tennessee, for the appellant, Marcus Ward.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; William L. Gibbons, District Attorney General; Colin Campbell, Assistant District Attorney General; and J. Ross Dyer, Senior Counsel, District Attorney General's Office, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On June 8, 2005, Marcus Ward pleaded guilty to one count of aggravated sexual battery, three counts of aggravated assault, and one count each of especially aggravated kidnaping and intentionally evading arrest in a motor vehicle. Mr. Ward was sentenced to eight years on the aggravated sexual battery charge to be served at 100%, three years on each of the aggravated assault charges to be served at 30%, thirteen and one-half years on the especially aggravated kidnaping charge to be served at 100%, and one year on the intentionally evading arrest in a motor vehicle charge; all the sentences were to be served concurrently for an effective sentence of thirteen and one-half years. At his sentencing hearing, Mr. Ward was not advised by the trial court that he was required to register with the Tennessee Sexual Offender Registry or that he was subject to lifetime community supervision.

On July 11, 2005, Mr. Ward filed a petition for post-conviction relief, alleging, among other things, that his guilty plea to the aggravated sexual battery charge was not knowingly, intentionally, and voluntarily made.[1] The post-conviction court held that although the trial court's failure to advise Mr. Ward of the sex offender registration requirement during the plea colloquy was deficient, notice of the requirement was not constitutionally required for a valid guilty plea because the registration was only a collateral consequence of the plea. As to Mr. Ward's claim that he was not advised of the requirement of lifetime community supervision, the trial court ruled that this claim failed for the same reason.

A majority of the Court of Criminal Appeals panel affirmed the post-conviction court's judgment, concluding that neither the sex offender registration requirement nor the mandatory sentence of community supervision for life constituted punishment, and therefore both were collateral, not direct, consequences. Accordingly, the majority ruled that Mr. Ward was not required to have been advised of those consequences in order to enter a constitutionally valid guilty plea. Ward v. State, No. W2007-01632-CCA-R3-PC, 2009 WL 113236 (Tenn. Crim. App. Jan. 14, 2009). Presiding Judge Tipton dissented, reasoning that the imposition of a sentence of community supervision for life as mandated by Tennessee

---

[1] Mr. Ward also alleged that he received ineffective assistance of counsel. Following an evidentiary hearing, the post-conviction court denied the ineffective assistance claim, finding that Mr. Ward did not establish by clear and convincing evidence that his trial counsel had failed to advise him that he would be required to register as a sex offender. As will be further explained herein, the issue of ineffective assistance of counsel is rendered moot by our determination that Mr. Ward's plea of guilty was not intelligently, knowingly, and voluntarily made.

Code Annotated section 39-13-524 imposes a direct and punitive consequence upon a defendant entering a guilty plea. Id. at *11.

## Issue

We granted review in this case to determine whether Mr. Ward's plea of guilty to aggravated sexual battery[2] was knowingly, intentionally, and voluntarily made when the trial court did not advise him of the following consequences of his guilty plea: (1) mandatory registration as a sexual offender, and (2) a mandatory sentence of community supervision for life in addition to his incarceration.

## Analysis

To prevail on his claim for post-conviction relief, Mr. Ward bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009). The trial court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). "Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact." Id. We review mixed questions of law and fact de novo, applying a presumption of correctness only to the post-conviction court's findings of fact. Id. at 830-31.

### Knowing and Voluntary Guilty Plea

When a defendant enters a guilty plea, he or she waives several constitutional rights, including the right against self-incrimination, the right to a trial by jury, and the right to confront his or her accusers. State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003). To pass constitutional muster under the Due Process Clause of the United States Constitution, a guilty plea must be entered knowingly, voluntarily, and intelligently. North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). In making the determination of whether a guilty plea was knowingly, voluntarily, and intelligently entered, the standard of inquiry is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Grindstaff,

---

[2] At the time of Mr. Ward's guilty plea and as pertinent to the circumstances of his case, Tennessee Code Annotated section 39-13-504 provided as follows: "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: (1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon."

297 S.W.3d at 218 (quoting Jaco, 120 S.W.3d at 831); see also Alford, 400 U.S. at 31. A plea is not voluntary unless the defendant understands the consequences of his or her plea. Mellon, 118 S.W.3d at 345. It follows then that "a plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." Id. (quoting Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993)). The waiver of these fundamental rights cannot be presumed, but must be evident in the record. Id. Thus, "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" Mackey, 553 S.W.2d at 340; see also State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). To find that the plea was entered "intelligently" and "knowingly," the trial court must discuss the matter with the accused to make sure he or she "has a full understanding of what the plea connotes and of its consequences." Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 244) (emphasis omitted).

In Tennessee, before accepting a guilty plea, the trial court is required to inform the defendant of, and determine that he or she understands, the following:

1) the nature of the charge to which the plea is offered and the mandatory minimum and maximum penalty provided by law;
2) the right of the defendant to be represented by counsel at every stage of the proceedings;
3) the right of the defendant to plead not guilty and to persist in that plea, the right to a jury trial, the right to assistance of counsel at trial, the right to confront and cross-examine witnesses against him, and the right against compelled self-incrimination;
4) that by pleading guilty or nolo contendere, the defendant waives the right to a trial; and
5) that if the defendant enters a guilty or nolo contendere plea, the trial court may question the defendant regarding the offenses and that any of the defendant's answers made under oath, on the record, and in counsel's presence may later be used against the defendant in a subsequent prosecution for perjury or false statement.

Howell v. State, 185 S.W.3d 319, 331 (Tenn. 2006) (citing Tenn. R. Crim. P. 11(c)(1)(5)).[3] In addition to these matters specified by Tennessee Rule of Criminal

---

[3] Tennessee Rule of Criminal Procedure 11 has been amended twice since the Howell opinion but remains substantively the same. Rule 11(b)(1) currently provides:

(continued...)

Procedure 11(b), the defendant must be advised, "if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea." Mackey, 553 S.W.2d at 341.

However, neither our federal nor state constitution requires that an accused be apprised of every possible or contingent consequence of pleading guilty before entering a valid guilty plea. Courts are constitutionally required to notify defendants of only the direct consequences – not the collateral consequences – of a guilty plea. Brady, 397 U.S. at 755; Blankenship, 858 S.W.2d at 905. In Blankenship, we observed that "[b]y contrast, some consequences are considered 'collateral,' rather than 'direct.'" 858 S.W.2d at 905. The distinction between a collateral and a direct consequence has often been formulated as turning on "whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Bautista v. State, 160 S.W.3d 917, 921 (Tenn. Crim. App. 2004) (overruled on other grounds by Padilla v. Kentucky, ___ U.S. ___, 130

---

[3](...continued)
Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

(A) The nature of the charge to which the plea is offered;

(B) the maximum possible penalty and any mandatory minimum penalty;

(C) if the defendant is not represented by an attorney, the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and every other stage of the proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self-incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence; and

(I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury.

S.Ct. 1473 (2010)) (quoting Adkins v. State, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994));
see also Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir. 1988)).  An example of a direct
consequence was presented in Mellon.  In Mellon, the trial court failed to explain to the
defendant that if the defendant breached his plea agreement by refusing to testify against his
co-defendants, he would be subject to a full sentencing hearing with the possibility of the
death penalty.  This Court held that the trial court's failure resulted in an involuntary and
unknowing guilty plea and a violation of the defendant's due process rights.  118 S.W.3d at
347-48.  An example of a collateral consequence was presented in the Jaco case, where we
held that "[a] defendant need not be informed of all criteria that affect his possible release
on parole in order for his guilty plea to be constitutionally sound." In Jaco, we reasoned that
"[n]either the federal nor the state constitution requires that [the defendant] be informed of
all possible factors that could affect the parole board's decision" whether to release the
defendant on parole at some later date.  120 S.W.3d at 829, 833.

### Tennessee Sexual Offender Registry Requirement

The Tennessee Sexual Offender and Violent Sexual Offender Registration,
Verification, and Tracking Act, Tenn. Code Ann. §§ 40-39-201 to 215 (2006 & Supp. 2009)
(the "registration act") was enacted in the wake of the brutal kidnaping, rape, and murder of
seven-year-old Megan Kanka on July 29, 1994, in Hamilton Township, New Jersey.  This
tragic event sparked the enactment of "Megan's Law."  Megan's murderer was a convicted
sex offender who lived across the street from her home.  In an effort to protect other children
from the acts of known sex offenders, the New Jersey legislature enacted Megan's Law,
which required notice to the surrounding community when a convicted sex offender moved
into the community after release from prison.  The abduction of eleven-year-old Jacob
Wetterling in St. Joseph, Minnesota, was the impetus for the adoption of the Jacob Wetterling
Crimes Against Children and Sexually Violent Offender Registration Program Act in
1994.  This Act required all states to adopt a system of sex offender registry by September
13, 1997, or face losing a portion of the state's federal funding.  By 1996, all fifty states and
the District of Columbia had enacted a version of Megan's Law.[4]

---

[4] 42 U.S.C.A. § 14071 et seq.; *Pursuing Public Protection Through Mandatory Community Notification of Convicted Sex Offenders: The Trials and Tribulations of Megan's Law*, 6 B.U. Pub. Int. L.J. 29 (Fall 1996); *Balancing the Protection of Children Against the Protection of Constitutional Rights: The Past, Present and Future of Megan's Law*, 42 Duq. L. Rev. 331 (Winter 2004).  In 1998, there were 2,800 registered sex offenders in the State of Tennessee.  This number increased by sixty-three percent to 4,561 in 2001.  Devon B. Adams, Summary of State Sex Offender Registries, 2001, Bureau of Justice Statistics Fact Sheet, NCJ-192265, March 2002, available at http://www.ojp.usdoj.gov/bjs/pub/pdf/sssor01.pdf.

Tennessee's sexual offender registration act was first adopted in 1994 and has been amended multiple times since Mr. Ward entered his guilty plea.[5] The act's language evinces a clear intent that the registration requirements be applied retroactively to any sexual offender. See Tenn. Code Ann. §§ 40-39-202 (20), (27) & (28); 40-39-203 (a)(2) & (j)(1) & (2). Consequently, the registration act, in its present form, is applicable to Mr. Ward rather than the version in effect when he entered his plea. Consequently, we apply and construe the registration act as currently written.[6] The Tennessee sexual offender registration act requires persons convicted of a sexual offense or violent sexual offense[7] to provide to law enforcement officials certain regularly updated information, including the offender's residence, employment, electronic mail or other internet identification, and other personal information. Tenn. Code Ann. § 40-39-203 (2006 & Supp. 2009). Additionally, Tennessee Code Annotated section 40-39-211 imposes certain other requirements on sexual offenders, providing in part as follows:

> (b) No sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, shall knowingly:
> (1) Reside within one thousand feet (1,000') of the property line on which the offender's former victims or the victims' immediate family members reside;
> (2) Come within one hundred feet (100') of any of the offender's former victims, except as otherwise authorized by law; or
> (3) Contact any of the offender's former victims or the victims' immediate family members without the consent of the victim or consent of the victim's parent or guardian if the victim is a minor being contacted by telephone, in writing, by electronic mail, Internet services or any other form of electronic communication, unless otherwise authorized by law.
> . . .
> (d)(1) No sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, shall knowingly:
> (A) Be upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field

---

[5] See 2005 Tenn. Pub. Acts Ch. 316; 2006 Tenn. Pub. Acts Ch. 890; 2007 Tenn. Pub. Acts Ch. 126, 262, 451, 465, 531, 594, and 764; 2008 Tenn. Pub. Acts Ch. 714, 979, 1143, and 1164; 2009 Pub. Acts. Ch. 145 and 597; 2010 Pub. Acts Ch. 750 (eff. July 1, 2010).

[6] The United States Supreme Court has upheld the retroactive application of Alaska's registration law against an ex post facto challenge. Smith v. Doe, 538 U.S. 84, 105-06 (2003).

[7] The terms "sexual offense" and "violent sexual offense" are defined at Tennessee Code Annotated sections 40-39-202(20) and (28) (2006 & Supp. 2009) respectively.

available for use by the general public in this state when the offender has reason to believe children under eighteen (18) years of age are present;

(B) Stand, sit idly, whether or not the offender is in a vehicle, or remain within one thousand feet (1,000') of the property line of any building owned or operated by any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when children under eighteen (18) years of age are present, while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there; or

(C) Be in any conveyance owned, leased or contracted by a school, licensed day care center, other child care facility or recreation center to transport students to or from school, day care, child care, or a recreation center or any related activity thereof when children under eighteen (18) years of age are present in the conveyance.

Tenn. Code Ann. § 40-39-211 (2006 & Supp. 2009). Subsections (a) and (c) of this statute impose further, more extensive restrictions on those offenders whose victim was a minor; however, these subsections are not implicated or subject to our review in the case at bar, because Mr. Ward's victim was an adult.

Mr. Ward argues that he should have been advised of the registration requirement because it is a direct and punitive consequence of his guilty plea. The State argues that the trial court was not required to advise Mr. Ward of the registration requirement because it is a collateral consequence of the guilty plea. We agree with the State's position. The General Assembly clearly indicated its intent that the registration act was a remedial and regulatory measure rather than a punitive measure. In addition the registration act, although perhaps inconvenient for Mr. Ward, has no effect on his range of punishment. We are joined in this view by a majority of the states in this country.

An examination of the clearly-expressed legislative intent of the registration act supports the conclusion that the registration requirements imposed by the sex offender registration act are nonpunitive and that they are therefore a collateral consequence of a guilty plea:

(b) The general assembly finds and declares that:

(1) Repeat sexual offenders, sexual offenders who use physical violence, and sexual offenders who prey on children are violent sexual offenders who present an extreme threat to the public safety. Sexual offenders pose a high

-8-

risk of engaging in further offenses after release from incarceration or commitment, and *protection of the public from these offenders is of paramount public interest*;

(2) It is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses collected pursuant to this part, *to allow members of the public to adequately protect themselves and their children* from these persons;

. . . .

(4) . . . the general assembly finds that releasing information about offenders under the circumstances specified in this part will further *the primary governmental interest of protecting vulnerable populations from potential harm*;

(5) The registration of offenders, utilizing complete and accurate information, along with the public release of specified information concerning offenders, *will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems* that deal with these offenders;

(6) To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. *This policy of authorizing the release of necessary and relevant information about offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive*;

. . . .

(8) The General Assembly also declares, however, that in making information about certain offenders available to the public, *it does not intend that the information be used to inflict retribution or additional punishment on any such offenders*.

Tenn. Code Ann. § 40-39-201 (2004) (emphasis added).  The plain language of this statute expresses a nonpunitive intent to protect the public.  In addition, as noted by the General Assembly, the registration requirement does not inflict additional punishment on Mr. Ward nor does it alter the range of punishment.

Although no Tennessee court has previously ruled on this precise question, courts in at least thirty-three other states have addressed this issue.  All but one of these states have concluded that a sexual offender registration requirement is a collateral consequence and that a trial court's failure to advise the defendant of the registration requirement does

not, therefore, render a guilty plea constitutionally infirm.[8] Courts applying this majority rule have utilized the following rationales: (1) the underlying intent of sex offender registration is public protection and safety, and registration requirements assist law enforcement agencies in protecting the health, safety, and welfare of members of the community and state;[9] (2) the

---

[8] See Robinson v. State, 730 So. 2d 252, 254 (Ala. Crim. App. 1998) (registration and notification requirements collateral consequences and not punishment); Patterson v. State, 985 P.2d 1007, 1019 (Alaska Ct. App. 1999), overruled on other grounds by Doe v. State Dep't of Pub. Safety 92 P.3d 398, 411 n.83 (Alaska 2004) (registration requirement a collateral consequence); State v. Young, 542 P.2d 20, 22 (Ariz. 1975) (registration collateral effect of conviction); People v. Montaine, 7 P.3d 1065, 1067 (Colo. Ct. App. 1999) (sex offender registration collateral consequence of guilty plea); State v. Scott, 2003 WL 21204469, at *1 (Del. Super. Ct. May 19, 2003) (registration a collateral consequence); State v. Partlow, 840 So. 2d 1040, 1043 (Fla. 2003) (registration collateral consequence of guilty plea); Foo v. State, 102 P.3d 346, 358 (Haw. 2004) (sex offender registration requirements are collateral consequences); Ray v. State, 982 P.2d 931, 935 (Idaho 1999) (registration not a direct consequence); People v. Taylor, 561 N.E.2d 393, 394 (Ill. App. Ct. 1990) (registration act not penal in nature); Spencer v. O'Connor, 707 N.E.2d 1039, 1046 (Ind. Ct. App. 1999) (notification not punishment); State v. Legg, 13 P.3d 355, 358 (Kan. Ct. App. 2000) (registration not a direct consequence); Carpenter v. Commonwealth, 231 S.W.3d 134, 137 (Ky. Ct. App. 2007) (registration a collateral consequence); Commonwealth v. Shindell, 827 N.E.2d 236, 238 (Mass. App. Ct. 2005) (registration requirement collateral to guilty plea); In re Lyons, No. 217858, 2000 WL 33389824, at *1 (Mich. Ct. App. Dec. 19, 2000) (registration a collateral consequence); Kaiser v. State, 641 N.W.2d 900, 907 (Minn. 2002) (registration regulatory rather than punitive consequence); Magyar v. State, 18 So. 3d 807, 811-12 (Miss. 2009) (registration collateral consequence of guilty plea); Ramsey v. State, 182 S.W.3d 655, 661 (Mo. Ct. App. 2005) (registration requirement collateral because not punitive); Nollette v. State, 46 P.3d 87, 90 (Nev. 2002) (sex offender registration requirement collateral consequence of guilty plea); State v. Costello, 643 A.2d 531, 534 (N.H. 1994) (no added punishment imposed by sex offender registration); State v. Moore, 86 P.3d 635, 643 (N.M. Ct. App. 2004) (court's failure to advise of registration and notification requirement does not render guilty plea invalid); People v. Clark, 704 N.Y.S.2d 149, 151 (N.Y. App. Div. 2000) (sex offender certification a collateral consequence); Davenport v. State, 620 N.W.2d 164, 166 (N.D. 2000) (registration a collateral consequence); State v. Omiecinski, No. 90510, 2009 WL 626114, at *7 (Ohio Ct. App. Mar. 12, 2009) (court not required to explain registration requirements because not punitive); Rodriguez-Moreno v. State, 145 P.3d 256, 259 (Or. Ct. App. 2006) (counsel not constitutionally inadequate for failing to advise of collateral registration requirement); Commonwealth v. Leidig, 956 A.2d 399, 406 (Pa. 2008) (registration requirements collateral, not direct, consequences of guilty plea); Williams v. State, 662 S.E.2d 615, 617-18 (S.C. Ct. App. 2008) (sex offender registration regulatory and non-punitive consequence); State v. Timperley, 599 N.W.2d 866, 869 (S.D. 1999) (registration a collateral consequence); Ducker v. State, 45 S.W.3d 791, 796 (Tex. App. 2001) (court's failure to admonish defendant on collateral registration requirement harmless error); Kitze v. Commonwealth, 475 S.E.2d 830, 832 (Va. Ct. App. 1996) (registration requirement not punishment); State v. Ward, 869 P.2d 1062, 1076 (Wash. 1994) (registration requirement not punitive but regulatory); State v. Bollig, 605 N.W.2d 199, 206 (Wis. 2000) (registration requirement collateral and not punitive); Johnson v. State, 922 P.2d 1384, 1387 (Wyo. 1996) (registration not punishment). But see People v. McClellan, 862 P.2d 739, 745 (Cal. 1993) (sex offender registration a direct consequence of plea).

[9] See, e.g., State v. Bollig, 605 N.W.2d 199, 204 (Wis. 2000) (noting that "[c]ourts that have
(continued...)

registration requirement does not impose such a substantial additional disability or restraint on an offender, such as lengthening his or her sentence or significantly restricting freedom of movement, as to render the effect of the otherwise remedial statute punitive;[10] (3) registration requirements in general have not been traditionally and historically considered punishment;[11] and (4) the overwhelming importance of protecting the public safety outweighs the discomfort or inconvenience imposed upon a sex offender by requiring compliance with the registration requirement.[12] Simply stated, the overwhelming majority of courts considering this issue have concluded that a sex offender registration requirement does not impose additional punishment on the offender.

The United States Supreme Court has not ruled on the exact issue presented here, but has upheld Alaska's sex offender registration act against an ex post facto challenge, finding that the act was nonpunitive in intent and effect. Smith, 538 U.S.at 105-06. Additionally, the United States Supreme Court has upheld Connecticut's registration law against a procedural due process challenge. Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003). The United States Court of Appeals for the Sixth Circuit, examining an earlier version of Tennessee's Sexual Offender Registration and Monitoring Act, has determined the act to be nonpunitive. Cutshall v. Sundquist, 193 F.3d 466, 477 (6th Cir. 1999). Courts

---

[9](...continued)
determined that sex offender registration is not punitive have held that the underlying intent is public protection and safety").

[10] See, e.g., Foo v. State, 102 P.3d 346, 357 (Haw. 2004) (noting that "the registration requirements of [Hawaii's sex offender registration act] are similar to the restrictions on the right to travel or the loss of a driver's license that are collateral consequences of a guilty plea"); State v. Ward, 869 P.2d 1062, 1069 (Wash. 1994) ("Registration alone imposes no significant additional burdens on offenders.").

[11] See, e.g., Smith v. Doe, 538 U.S. 84, 98 (2003) (observing that "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment"); Nollette v. State, 46 P.3d 87, 91 (Nev. 2002) (noting that "traditionally, registration requirements for certain criminal offenders are viewed as a law enforcement technique and are not designed to serve traditional aims of punishment, deterrence, and retribution").

[12] See, e.g., People v. Taylor, 561 N.E.2d 393, 394 (Ill. App. Ct. 1990) ("Any limitation of the rights of an offender proscribed by the Act is made insignificant when weighed against the protection to the public."); State v. Seering, 701 N.W.2d 655, 668 (Iowa 2005) (finding it "difficult to conclude that the restrictions are excessive considering the special needs of children in this particular aspect of our society and the imprecise nature of protecting children from the risk that convicted sex offenders might reoffend").

from other jurisdictions addressing the ex post facto issue have likewise held that similar state statutes are not punitive.[13]

We agree with the majority of states that the registration requirements imposed by the sex offender registration act are nonpunitive and that they are therefore a collateral consequence of a guilty plea. In summary, while the registration requirement is undoubtedly a definite, immediate, and largely automatic consequence of a conviction of a sexual offense or violent sexual offense, it does not have an effect on the length, manner, or service of the defendant's punishment. Consequently, the trial court's failure to advise Mr. Ward of the sex offender registration requirement does not render Mr. Ward's guilty plea constitutionally invalid. However, it is clearly better practice for a trial court to advise a defendant that a consequence of pleading guilty to an offense requiring sex offender registration is that the defendant must register as a sex offender, and we encourage trial courts in Tennessee to make every effort to ensure that defendants are so advised prior to entering a guilty plea.

In concluding the analysis of this issue, we add two final observations. First, at the risk of stating the obvious, we address the applicable sections of the registration act as currently written and in effect. As noted in footnote 4, the General Assembly has frequently enacted amendments to the registration act – amending the statute at least fifteen times since 2005. Although some of the amendments have loosened the requirements imposed on sex offender registrants, most of the changes have had the effect of adding or increasing requirements and restrictions. Obviously, nothing in this opinion precludes the possibility that an amendment to the registration act imposing further restrictions may be subject to review on the grounds that the additional requirements render the effect of the act punitive. Secondly, we reiterate that the restrictions imposed by Tennessee Code Annotated

---

[13] See Collie v. State, 710 So. 2d 1000, 1008 (Fla. Dist. Ct. App. 1998) (designation as sexual predator a collateral consequence); State v. Seering, 701 N.W.2d 655, 667 (Iowa 2005) (no punitive intent to sex registration requirement); State v. Myers, 923 P.2d 1024, 1041 (Kan. 1996) (sex offender registration act not punitive but regulatory); Hyatt v. Commonwealth, 72 S.W.3d 566, 572 (Ky. 2002) (sexual predator designation not punishment); Doe v. Poritz, 662 A.2d 367, 404-05 (N.J. 1995) (registration requirement not punitive but regulatory); State v. Burr, 598 N.W.2d 147, 158-59 (N.D. 1999) (registration not punishment); State v. Cook, 700 N.E.2d 570, 581 (Ohio 1998) (no punitive intent underlying registration statute); State v. Matthews, 978 P.2d 423, 426 (Or. Ct. App. 1999) (no retributive intent behind registration requirement); Commonwealth v. Gaffney, 702 A.2d 565, 569 (Pa. Super. Ct. 1997) (registration provisions not intended to punish); State v. Walls, 558 S.E.2d 524, 526 (S.C. 2002) (registration act not so punitive as to constitute a criminal penalty).

section 40-39-211(a) & (c),[14] applicable only to offenders whose victim was a minor, are not at issue here because Mr. Ward's victim was not a minor.

## Lifetime Supervision Requirement

We now turn to an application of the same analysis to a different requirement: the imposition of a sentence of community supervision for life pursuant to Tennessee Code Annotated section 39-13-524 (2006 & Supp. 2009). A sentence of community supervision for life for certain enumerated crimes is provided for in Tennessee Code Annotated section 39-13-524 as follows:

> (a) *In addition to the punishment* authorized by the specific statute prohibiting the conduct, any person who, on or after July 1, 1996, commits a violation of § 39-13-502 [aggravated rape], § 39-13-503 [rape], § 39-13-504 [aggravated sexual battery], § 39-13-522 [rape of a child], or attempts to commit a violation of any of these sections, *shall receive a sentence of community supervision for life.*[15]

---

[14] Tennessee Code Annotated sections 40-39-211(a) and (c) provide:

(a) While mandated to comply with the requirements of this chapter, no sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, whose victim was a minor, shall knowingly establish a primary or secondary residence or any other living accommodation, knowingly obtain sexual offender treatment or attend a sexual offender treatment program or knowingly accept employment within one thousand feet (1,000') of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public.

. . .

(c) While mandated to comply with the requirements of this part, no sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, whose victim was a minor, shall knowingly reside with a minor. Notwithstanding this subsection (c), the offender may reside with a minor, if the offender is the parent of the minor, unless one (1) of the following conditions applies:

(1) The offender's parental rights have been or are in the process of being terminated as provided by law; or

(2) Any minor or adult child of the offender was a victim of a sexual offense or violent sexual offense committed by the offender.

[15] Although this statute provides for a sentence of "community supervision for life," Tennessee Code Annotated section 39-13-525(a) (2006) provides that after a person sentenced to community supervision has been on supervision for a period of fifteen years, the person may petition the sentencing court for release from community supervision. The possibility of release from community supervision after fifteen years

(continued...)

(b) *The judgment of conviction* for all persons to whom the provisions of subsection (a) apply *shall include that the person is sentenced to community supervision for life.*

(c) *The sentence of community supervision for life shall commence immediately upon the expiration of the term of imprisonment imposed upon the person by the court or upon the person's release from regular parole supervision*, whichever first occurs.

(d)(1) A person on community supervision shall be under the jurisdiction, supervision and control of the board of probation and parole in the same manner as a person under parole supervision. The board is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person.

(2) The board is authorized to impose and enforce a supervision and rehabilitation fee upon a person on community supervision similar to the fee imposed by § 40-28-201. To the extent possible, the board shall set the fee in an amount that will substantially defray the cost of the community supervision program. The board shall also establish a fee waiver procedure for hardship cases and indigency.

Tenn. Code Ann. § 39-13-524 (emphasis added).

We conclude that the imposition of a sentence of community supervision for life is punitive for several reasons. First, there is no statement indicating a nonpunitive intent as in Tennessee Code Annotated section 40-39-201 cited above. Moreover, the language employed by the General Assembly in enacting section 39-13-524 is strongly indicative of punitive intent. The phrase "in addition to the punishment" in subsection (a) suggests that the mandatory lifetime supervision requirement is additional "punishment" for the enumerated crimes. The statute's repeated use of the term "sentence" also suggests punishment. See Black's Law Dictionary 1485 (9th ed. 2009) (defining "sentence" as "*punishment* imposed on a criminal wrongdoer") (emphasis added). The United States Supreme Court, in Smith, indicated that the intent of the legislature, while not dispositive, should be afforded considerable deference, and if a court finds punitive intent, that finding ends the inquiry:

> *If the intention of the legislature was to impose punishment, that ends the inquiry.* If, however, the intention was to enact a regulatory scheme that is

---

[15](...continued)
under subsection 525(a) does not alter our analysis.

civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil. . . . Whether a statutory scheme is civil or criminal is first of all a question of statutory construction. We consider the statute's text and its structure to determine the legislative objective. *A conclusion that the legislature intended to punish would satisfy an ex post facto challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it.*

Smith, 538 U.S. at 92-3 (emphasis added) (citations omitted). The statute is also punitive in effect, requiring an offender to regularly report to a parole officer who is granted wide discretion in imposing supervisory requirements, and to pay a monthly fee. The imposition of lifetime supervision and the attendant consequences placed on an individual after having served his or her entire sentence of incarceration and/or regular parole are significant.

In Blankenship, this Court, discussing the constitutional requirement that an accused be "fully aware of the direct consequences" of his or her guilty plea in the context of analyzing whether a plea is knowing, intelligent, and voluntary, provided the following pertinent observation: "[t]he *most obvious 'direct consequence' of a conviction is the penalty to be imposed.* It is, therefore, well-recognized that *the defendant must be apprised of the sentence that he will be forced to serve* as the result of his guilty plea and conviction." 858 S.W.2d at 905 (emphasis added). Additionally, as we have noted, Tennessee Rule of Criminal Procedure 11 requires the trial court, when considering and accepting a guilty plea, to advise the defendant of, among other things, "the maximum possible penalty and any mandatory minimum penalty." Tenn. R. Crim. P. 11(b)(1)(B).[16] Because the mandatory lifetime supervision requirement is an additional part of a defendant's sentence, the trial court is constitutionally required to inform the defendant of the supervision requirement as part of the plea colloquy.

Although far fewer courts from other jurisdictions have addressed this question than have considered the sexual offender registry requirement, those that have considered a lifetime supervision requirement have held it to be a direct consequence. See Palmer v. State, 59 P.3d 1192, 1196-97 (Nev. 2002) (concluding that "lifetime supervision is a direct consequence of a guilty plea"); State v. Jamgochian, 832 A.2d 360, 362 (N.J. Super. Ct. App.

---

[16] We also note that the federal counterpart to Tennessee Rule of Criminal Procedure 11, Federal Rule of Criminal Procedure 11, explicitly provides that "[b]efore the court accepts a plea of guilty . . . the court must inform the defendant of, and determine that the defendant understands, the following: . . . any maximum possible penalty, including imprisonment, fine, *and term of supervised release*[.]" Fed. R. Crim. P. 11(b)(1)(H) (emphasis added).

Div. 2003) (holding that community supervision for life "is a penal and not a collateral consequence"); People v. Goss, 733 N.Y.S.2d 310, 314 (N.Y. App. Div. 2001) (concluding that "postrelease supervision is a significant, punitive component of defendant's sentence").

Our holding that an additional sentence of lifetime community supervision is a direct and punitive consequence of which a defendant must be informed in order to enter a knowing and voluntary guilty plea in no way signifies a retreat from our holding in Jaco that "[a] defendant need not be informed of all criteria that affect his possible release on parole in order for his guilty plea to be constitutionally sound." 120 S.W.3d at 829. The State argues that "in essence, community supervision is nothing more than a specialized form of parole supervision," noting that the United States Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary." Hill v. Lockhart, 474 U.S. 52, 56 (1985). The Court of Criminal Appeals in the instant case agreed with this analogy, citing the dissent in an earlier unreported Court of Criminal Appeals opinion, Parker v. State, No. M2007-02799-CCA-R3-PC, 2008 WL 2938046 (Tenn. Crim. App. July 31, 2008), that addressed the same question regarding the lifetime supervision requirement as presented here.

It is obvious that "community supervision" is very similar to parole in terms of the requirements imposed upon a supervisee. The statute mandates that "[a] person on community supervision shall be under the jurisdiction, supervision and control of the board of probation and parole in the same manner as a person under parole supervision." Tenn. Code Ann. § 39-13-524(d)(1). The critical distinction, however, lies in the very different circumstances surrounding the imposition of a sentence of lifetime supervision, as opposed to early release from prison on parole. From the perspective of someone who is incarcerated, release on parole is a good and desirable consequence. From the perspective of someone who has served his or her entire sentence of incarceration and/or parole, an *additional* sentence of lifetime supervision is an undesirable and punitive consequence. Jaco dealt with a post-conviction petitioner's claim that he had been unaware of a possible impediment to his release on parole – the potential effect of a statutory requirement that a sex offender be examined and evaluated by a mental health professional prior to being eligible for parole. 120 S.W.3d at 830; see also Tenn. Code Ann. § 40-35-503(c) (2003). We recognized in Jaco that "[r]elease on parole is a privilege, not a right," 120 S.W.3d at 832 (quoting Tenn. Code Ann. § 40-35-503(b)), and noted that a defendant is not constitutionally required to "be informed of all possible factors that could affect the parole board's decision." Id. at 833.

Conversely, lifetime community supervision is not a contingent and uncertain privilege like release on parole. While parole allows an offender to serve part of his or her sentence of incarceration in a less restrictive environment, lifetime supervision imposes an

additional set of restrictions and requirements on the offender *after* serving his or her entire sentence of incarceration. The Supreme Court of Nevada, addressing and rejecting the same argument as presented by the State here, noted the differences between lifetime supervision and parole:

> Generally, parole is a privilege . . . that benefits one serving a term of imprisonment by allowing the prisoner to serve part of the term "outside the walls of the institution" in a supervised but non-custodial environment. Parole is a collateral consequence of a guilty plea because it is served in lieu of actual prison time and "is wholly beyond the jurisdiction of the district judge" to grant. Lifetime supervision, on the other hand, must be imposed by the sentencing judge and served in addition to any term of imprisonment, probation or parole as a matter of law.

Palmer, 59 P.3d at 1196 (footnotes omitted).

Finally, the Court of Criminal Appeals distinguished its earlier holding in the Parker case by noting that "[i]n the present case, the petitioner's claim is that he was not advised at all about community supervision for life, not, as in Parker, that he received incorrect legal advice." Ward, 2009 WL 113236, at *10. We disagree that this distinction is dispositive or significant for purposes of determining whether a guilty plea was knowingly, intelligently, and voluntarily made. We have noted on several occasions that "[c]ertainly, a plea is not 'voluntary' if it results from ignorance [or] misunderstanding . . ." Mellon, 118 S.W.3d at 345 (citing Blankenship, 858 S.W.2d at 904); see also Boykin, 395 U.S. at 242-43. If a defendant receives incorrect legal advice, his or her guilty plea is potentially a product of "misunderstanding." If a defendant receives no advice regarding a direct consequence of his or her guilty plea, the plea is potentially a product of "ignorance." In either case, a defendant's right to due process would be violated.

In summary, we hold that the mandatory sentence of lifetime supervision imposed in addition to other statutorily authorized punishment is a direct and punitive consequence of a plea of guilty to the crimes enumerated in Tennessee Code Annotated section 39-13-524(a). Consequently, trial courts have an affirmative duty to ensure that a defendant is informed and aware of the lifetime supervision requirement prior to accepting a guilty plea.

Where, as here, the trial court has committed constitutional error by failing to ensure that the defendant is aware of a direct consequence of his or her guilty plea, the judgment of conviction must be set aside unless the State proves that the error was harmless beyond a reasonable doubt. State v. Neal, 810 S.W.2d 131, 138-40 (Tenn. 1991), overruled in part on other grounds by Blankenship, 858 S.W.2d at 902. As the Neal Court observed, "[i]f it can

be shown that the defendant already knew what he was not advised, . . . the harmless nature of the error is classic." Id. at 139. "If the State can demonstrate that the error was harmless beyond a reasonable doubt, then the judgment stands. If a reasonable doubt exists at the close of the proof, then the judgment must be set aside." Id. at 139-40; accord Adkins, 911 S.W.2d at 348 (stating "[i]f a reviewing court determines that the failure to strictly advise of the Boykin rights 'was harmless beyond a reasonable doubt,' the conviction stands").

In the instant case, the State failed to prove that the trial court's failure to advise Mr. Ward of the direct lifetime supervision consequence of his guilty plea was harmless beyond a reasonable doubt. The State submitted the testimony of Mr. Ward's trial counsel, who testified that he did not have any specific recall of his conversations with Mr. Ward but would have discussed with him "all of the charges and all of the requirements of those charges." Mr. Ward's trial counsel was not asked directly whether he told Mr. Ward about the supervision requirement prior to his plea of guilty, but counsel testified that he did not "have any independent memory of actually sitting in the back going through the guilty plea with" Mr. Ward. On the other hand, Mr. Ward testified at the hearing that his trial counsel did not advise him of the lifetime supervision requirement. Further, Mr. Ward testified without contradiction that on the "special conditions" area of the order of judgment form, the box beside the statement "[p]ursuant to 39-13-524 the defendant is sentenced to community supervision for life following sentence expiration" was unchecked when he signed the form. Mr. Ward's trial counsel corroborated his testimony by stating that it was probable that the lifetime supervision provision box was checked *after* Mr. Ward signed the judgment order. When trial counsel was asked whether he "recall[ed] specifically whether [he] informed Mr. Ward that those changes had been made after he gave his signature," counsel testified, "no, I don't remember if I did or not." Mr. Ward testified that he would not have pleaded guilty to aggravated sexual battery if he had been made aware of the attendant consequences of his guilty plea. In short, there is clearly a reasonable doubt that the trial court's failure to ensure that Mr. Ward was advised of the lifetime supervision requirement was harmless error.

Mr. Ward also raised the issue of ineffective assistance of counsel. However, because our determination that Mr. Ward's guilty plea was not made knowingly, intelligently, and voluntarily is determinative, the issue of whether he received ineffective assistance of counsel is moot and pretermitted. See Mellon, 118 S.W.3d at 348.

**Conclusion**

The judgment of the Court of Criminal Appeals affirming Mr. Ward's conviction for aggravated sexual battery is reversed. Following remand, the judgment of conviction shall be vacated and Mr. Ward shall be allowed to withdraw his guilty plea and stand trial on the

original count of aggravated sexual battery in the indictment, if necessary. Costs on appeal are assessed to the appellee, State of Tennessee.

_____
SHARON G. LEE, JUSTICE