IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 12, 2015

**CHARLES WAYNE DALTON v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Lincoln County
No. S0800040     Forest A. Durard, Jr., Judge**

———————————

**No. M2014-02156-CCA-R3-ECN – Filed May 5, 2016**

———————————

The Petitioner, Charles Wayne Dalton, filed a petition for writ of error coram nobis, seeking relief from his convictions of two counts of especially aggravated kidnapping and two counts of aggravated kidnapping. The Petitioner contended that he entered guilty pleas and forfeited his right to appeal without knowing that he would be required to be on the sexual offender registry for life. The trial court denied relief, and the Petitioner appeals. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. CAMILLE R. MCMULLEN, J., filed a concurring opinion.

Melissa L. Thomas, Fayetteville, Tennessee, for the Appellant, Charles Wayne Dalton.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Robert J. Carter, District Attorney General; and Ann L. Filer, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

This court previously set out the factual background of this case as follows:

> The indictment against [the Petitioner] included fourteen counts of theft of property valued at $1,000 or more but less than $10,000, eight counts of theft of property valued

at $500 or more but less than $1,000, eleven counts of aggravated burglary, two counts of evading arrest, two counts of aggravated kidnapping, two counts of especially aggravated kidnapping, one count of vandalism, one count of reckless endangerment, one count of driving with a suspended license, and one count of aggravated assault. The trial court severed counts thirty-one through forty-three from the remaining counts, and a jury convicted petitioner of those thirteen counts. The counts for which a jury convicted [the Petitioner] included vandalism, evading arrest, reckless endangerment, driving on a suspended license, aggravated assault, aggravated kidnapping, and especially aggravated kidnapping. [The] Petitioner was also convicted by a jury of one count of aggravated burglary and one count of theft.

The trial court set [the Petitioner's] sentencing hearing on the counts that were tried for May 5, 2009. On the day of the sentencing hearing, [the Petitioner] and the State entered an agreement by which [the Petitioner] agreed to plead guilty to the thirty remaining counts and receive a total effective sentence of twenty-five years at 100% for all forty-three counts. As part of the agreement, [the Petitioner] waived his right to appeal his conviction for counts thirty-one through forty-three.

Charles Wayne Dalton v. State, No. M2011-00949-CCA-R3-PC, 2012 WL 1591825, at *1 (Tenn. Crim. App. at Nashville, May 4, 2012).

Subsequently, on April 21, 2010, the Petitioner filed a petition for post-conviction relief, alleging "that trial counsel was ineffective for not properly explaining all of the rights that [the] Petitioner waived as a result of the plea agreement." Id. On March 18, 2011, the post-conviction court denied the petition, and on appeal, this court affirmed the denial. Id.

Thereafter, on June 25, 2013, the Petitioner filed a petition for writ of error coram nobis, asserting that when he entered his guilty pleas, he did not know that he would be required to register as a sexual offender as a result of his convictions.[1] The Petitioner

---

[1] Tennessee Code Annotated section 40-39-202(24) (2006) provides that a "[v]iolent sexual offender" is a person who has been convicted of a violent sexual offense as defined in subdivision (25). Subdivision (25) provides that aggravated kidnapping where the victim is a minor and especially aggravated kidnapping where the victim is a minor are "[v]iolent sexual offense[s]." Tenn. Code Ann. § 40-39-202(25)(H), (I) (2006). Tennessee Code Annotated section 40-39-203 (2006) provides, generally, the

acknowledged that his petition was not timely but maintained that due process required that the statute of limitation be tolled because of newly discovered evidence. He contended that he found out he would have to register as a sexual offender when he was approached on June 26, 2012, to provide information for the registry. On September 13, 2013, the State filed a response, contending that the petition should be denied as being time-barred.

On January 21, 2014, the trial court entered an agreed order. The order stated that the petition for writ of error coram nobis would be treated as a motion to amend the judgment pursuant to Tennessee Rule of Criminal Procedure 36. The agreed order stated

> [t]hat the State of Tennessee and [the] Petitioner agree that the Petitioner, although he pled gulty to two counts of Aggravated Kidnapping in Counts numbered 37 and 38 . . . and two counts of Especially Aggravated Kidnapping . . . , [he] should not be placed on the Tennessee Sex Offender Registry for those offenses, and for the [Petitioner] to be placed on the Tennessee Sex Offender Registry is a mistake with respect to Rule 36 of the [Tennessee Rules of Criminal Procedure]. The Petitioner did not commit any sort of sexual offensive behavior in relation to [the foregoing offenses].

The agreed order provided that the Petitioner would be removed from the sexual offender registry.

On February 27, 2014, the State filed a petition to vacate the agreed order, contending that the parties did not have the authority to agree to remove the Petitioner from the sexual offender registry. On March 25, 2014, the trial court entered an order vacating the January 21, 2014 order.

Thereafter, the Petitioner filed a brief in support of his petition for writ of error coram nobis, reiterating the grounds for relief alleged in his petition. The State filed a brief in opposition, stating that the writ of error coram nobis was not the appropriate mechanism for the relief requested and that, even if coram nobis relief could be granted, the petition was filed more than one year after the judgment became final and was therefore barred by the statute of limitations.

The record reflects that the trial court held a hearing on the matter on September 8, 2014.[2] The same day, the court issued an order in which it found that the Petitioner was

---

requirements of a sexual offender with respect to the registry.

[2] The appellate record does not contain a transcript of this hearing.

- 3 -

convicted by a jury of the offenses that triggered the need to register as a sexual offender, namely two counts of especially aggravated kidnapping involving minors. The court further found that the registry requirement was "not evidence and would not have produced any different result at trial." The court further found that none of the offenses to which the Petitioner pled guilty required that he register as a sexual offender. The court stated:

> The [Petitioner] is not required to be on Community Supervision for Life and, therefore, the failure of the trial court, assuming there was a duty to do so under these facts, to advise the [Petitioner] of the [sexual offender registry] was not a direct and punitive consequence of his plea which would warrant the same being set aside.

The court cited Ward v. State, 315 S.W.3d 461, 472 (Tenn. 2010), which states that "while the registration requirement is undoubtedly a definite, immediate, and largely automatic consequence of a conviction of a sexual offense or violent sexual offense, it does not have an effect on the length, manner, or service of the defendant's punishment." Finally, the court found that the Petitioner could have presented his claim during the post-conviction proceedings but did not. Based upon the foregoing, the trial court denied the petition.

On September 9, 2014, the parties entered a stipulation to the facts as recounted in this court's opinion regarding the post-conviction proceedings. Additionally, the parties stipulated as follows:

> [1] That at the time the [P]etitioner entered his agreement with the State before the Court on May 5, 2009, the Court, the State nor [the P]etitioner's counsel did make or previously make any mention to [the Petitioner] of his requirement to register as a violent sex offender for life as required by his convictions for two counts of especially aggravated kidnapping and two counts of aggravated kidnapping, pursuant to T.C.A. § 40-39-202(25)(H)[,](I) and § 40-39-207(f)(1)(B).
>
> [2] The State does not dispute that [the Petitioner] had no knowledge at the time of the plea agreement of the requirement to be on the violent sex offender registry.
>
> [3] The State does not dispute that the [Petitioner] remained unaware of the violent sex offender requirement until June

26, 2012, when Tennessee Department of Corrections personnel approached him to gain information for the violent sex offender registry, that his convictions for two counts of especially aggravated kidnapping and two counts of aggravated kidnapping, required him to register for life as a violent sex offender.

## II. Analysis

The writ of error coram nobis, which originated in common law five centuries ago, "'allowed a trial court to reopen and correct its judgment upon discovery of a substantial factual error not appearing in the record which, if known at the time of judgment, would have prevented the judgment from being pronounced.'" State v. Wlodarz,[3] 361 S.W.3d 490, 496-97 (Tenn. 2012) (quoting State v. Mixon, 983 S.W.2d 661, 666-67 (Tenn. 1999)). The writ, as first codified in Tennessee in 1858, was applicable to civil cases. Id. at 498. In 1955, a statutory version of the writ of error coram nobis was enacted, making the writ also applicable to criminal proceedings. Id. In general, the writ "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." Mixon, 983 S.W.2d at 672.

Currently, the writ is codified in Tennessee Code Annotated section 40-26-105:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Our supreme court has held that a conviction pursuant to a guilty plea falls within a broad interpretation of a "trial" for the purposes of the aforementioned statute. Wlodarz, 361 S.W.3d at 503.

---

[3] We note that our supreme court recently granted a Rule 11 application for permission to appeal an opinion of this court in which the supreme court directed the parties to address whether it should reconsider its opinion in Wlodarz. Clark Derrick Frazier v. State, No. M2014-02374-SC-R11-ECN (Tenn. Oct. 16, 2015) (order).

Our supreme court outlined the procedure that a trial court considering a petition for a writ of error coram nobis is to follow:

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result.

State v. Vasques, 221 S.W.3d 514, 527 (Tenn. 2007). In determining whether the new information may have led to a different result, the question before the court is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" Id. (quoting State v. Roberto Vasques, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. at Nashville, Oct. 7, 2005)). However, there are limits to the types of evidence that may warrant the issuance of a writ of error coram nobis. See, e.g., State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Aside from the fact that the evidence must be both admissible and material to the issues raised in the petition,

> [a]s a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial will not justify the granting of a petition . . . when the evidence . . . would not have resulted in a different judgment.

Id. (citations omitted). Further, in the context of a guilty plea, "in order for a writ to issue, the appellant [has] to present newly discovered evidence which would show that his plea was not voluntarily or knowingly entered." Newsome v. State, 995 S.W.2d 129, 134. (Tenn. Crim. App. 1998). Thus, the trial court must consider the impact of the newly discovered evidence on the validity of the petitioner's plea. Generally, a decision whether to grant a writ rests within the sound discretion of the trial court. See Hart, 911 S.W.2d at 375.

A writ of error coram nobis must be filed within one year after the judgment becomes final in the trial court. Tenn. Code Ann. § 27-7-103. Clearly, the instant petition was filed well beyond the one-year statute of limitations. Nevertheless, the one-year statute of limitations may be tolled on due process grounds if a petition seeks relief

based upon newly discovered evidence of actual innocence. Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012).

Our supreme court has stated that "[i]n determining whether tolling of the statute is proper, the court is required to balance the petitioner's interest in having a hearing with the interest of the State in preventing a claim that is stale and groundless." Id. In general, "'before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)). Our supreme court described the three steps of the "Burford rule" as follows:

> "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim."

Id. (quoting Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)). "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." State v. Harris, 301 S.W.3d 141, 145 (Tenn. 2010).

In the Petitioner's brief supporting his petition for writ of error coram nobis, he asked that "the trial court set aside his plea agreement in this case, based on his lack of knowledge of the punishment he subjected himself to at the time he entered his guilty pleas and with an agreed upon sentence and allow petitioner an appeal as of right to the jury verdict in the counts which were tried." In the trial court and on appeal, the Petitioner stated that he "wishe[d] only to be given the right to appeal his convictions for which a jury found him guilty."

Initially, we agree with the trial court that the convictions that mandated the Petitioner's compliance with the sexual offender registry were not "evidence" of actual innocence that would have changed the course of trial. Therefore, the trial court found that the statute of limitation should not be tolled; again, we agree.

Further, regarding whether the grounds for relief actually arose after the limitations period would normally have commenced, we note that since 2006, the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act has included aggravated kidnapping and especially aggravated kidnapping

as "sexual offenses." Tenn. Code Ann. § 40-39-202(25)(H), (I) (2006). Accordingly, the issue did not arise after the limitations period, and, even though he claims he was not told about the registry, the exercise of reasonable diligence would have led to a timely discovery of the information. See Wilson, 367 S.W.3d at 234; Vasques, 221 S.W.3d at 527.

Moreover, we note that in Ward v. State, 315 S.W.3d 461, 475 (Tenn. 2010), our supreme court determined that a "sentence of lifetime community supervision is a direct and punitive consequence of which a defendant must be informed in order to enter a knowing and voluntary guilty plea." However, in examining whether a defendant's not being advised that he would be required to register as a sexual offender for life rendered his guilty pleas involuntary and unknowing, the court noted that "neither our federal nor state constitution requires that an accused be apprised of every possible or contingent consequence of pleading guilty before entering a valid guilty plea. Courts are constitutionally required to notify defendants of only the direct consequences—not the collateral consequences—of a guilty plea." Id. at 466-67. The court observed that "Tennessee's sexual offender registration act was first adopted in 1994[.]" Id. at 468. In creating the act, "[t]he General Assembly clearly indicated its intent that the registration act was a remedial and regulatory measure rather than a punitive measure." Id. at 469. Because "the registration requirements imposed by the sex offender registration act are nonpunitive[,] . . . they are therefore a collateral consequence of a guilty plea." Id. at 472. The court concluded that "while the registration requirement is undoubtedly a definite, immediate, and largely automatic consequence of a conviction of a sexual offense or violent sexual offense, it does not have an effect on the length, manner, or service of the defendant's punishment." Id. at 472. Therefore, the court concluded that a "trial court's failure to advise [a defendant] of the sex offender registration requirement does not render [a defendant's] guilty plea constitutionally invalid." Id. Ergo, as the trial court found, the failure to advise the Petitioner of the sexual registration requirement would not have made his guilty plea, in which he waived the right to appeal the convictions that triggered the requirement, constitutionally invalid.

## III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE