# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 29, 2013

## MICHAEL L. MCMAHAN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
No. 93244    Bob R. McGee, Judge

---

**No. E2012-00498-CCA-R3-PC-FILED-JULY 17, 2013**

---

Michael L. McMahan ("the Petitioner") entered a guilty plea to one count of aggravated burglary, five counts of especially aggravated kidnapping, three counts of aggravated rape, two counts of aggravated sexual battery, and two counts of aggravated robbery. Pursuant to his plea agreement, the trial court sentenced the Petitioner to an effective sentence of twenty-five years. The Petitioner subsequently filed for post-conviction relief, which the post-conviction court denied following an evidentiary hearing. The Petitioner now appeals, arguing that his plea was constitutionally invalid and that he received ineffective assistance of counsel in conjunction with his plea submission hearing. Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment
of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Tracy Jackson Smith, Knoxville, Tennessee, for the appellant, Michael L. McMahan.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Senior Counsel; Randall Nichols, District Attorney General; and Philip Morton and Eric Counts, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On November 19, 2008, the Petitioner pleaded guilty to one count of aggravated burglary, five counts of especially aggravated kidnapping, three counts of aggravated rape, two counts of aggravated sexual battery, and two counts of aggravated robbery. At the plea

submission hearing, the State, without objection from the Petitioner, recited the factual basis for the Petitioner's plea as follows:

> [O]n June the 3rd, 2007, these two defendants along with a codefendant by the name of Damien Nolan . . . about 1:30 in the morning approached the residence belonging to Doug and Tammy Price at 1713 River Shore Drive here in Knox County.
>
> All three of these individuals, in particular these two defendants, Page and [the Petitioner], gained entry by forcing open a rear door leading into a basement area of the Price home.
>
> All three of these defendants . . . were armed with handguns. And after entering the home made their way up a flight of stairs into the main living area of the Price home.
>
> All three armed defendants then entered the bedroom of the victims . . . where they were both in their bed asleep. As he was awakened, Mr. Price was struck in the head with a gun and pistol whipped by these defendants acting in concert.
>
> [The victims] were forced out of their bed at gunpoint, ordered to lay [sic] down on the bedroom floor on a rug that was adjacent to the bed. Very early on in this encounter Ms. Price was forced to remove her clothing. Both victims were thereafter tied up with belts found among the victims' clothing in their bedroom.
>
> All three defendants managed to know where the victims[] kept their money. Mr. Price at one point indicated that he kept his credit cards in a downstairs office, and offered to give those credit cards to the defendants.
>
> [The Petitioner] and Mr. Nolan thereafter escorted Mr. Price at gunpoint to his downstairs office where he gave Mr. Nolan and [the Petitioner] his credit cards. In particular one bank card together with the pin number for a – for the bank card that he uses at SunTrust Bank.
>
> While downstairs at some point in time, these defendants acting in concert also stole from Mr. Price a collection of state quarters valued at approximately $3,000.00 and used one of Mr. Price's camera bags to conceal and ultimately remove these quarters from the home.

While Nolan and [the Petitioner] confined Mr. Price downstairs, Defendant Page still in the bedroom with Ms. Price, confined her there at gunpoint and forced her to perform oral sex on him at gunpoint.

During the course of that Mr. Page ejaculated inside Ms. Price's mouth leaving DNA material that caused Ms. Price to be on the verge of throwing up. When she reported that to Mr. Page that she was about to throw up, he made statements to the effect, "if you throw up, I'll blow your head off."

Mr. Price was ultimately returned to the bedroom at gunpoint and forced to lie down on the floor and watch as Ms. Price was forced at gunpoint to have oral sex with the other two defendants. During the sexual encounter these two defendants, [the Petitioner] and Page, also attempted vaginal rape initially by touching the vaginal area with the finger and later attempting to penetrate with the penis. But this act was not completed.

At one point, Ms. Price was removed at gunpoint to a downstairs area to show all three of these defendants where the surveillance camera's power switch was, and was forced to turn it off.

While in the bedroom, all of the defendants while armed with and using deadly weapons, forced [Ms.] Price to show them where her jewelry was within the bedroom closet area. She showed them and turned over items of jewelry to them as demanded.

This entire ordeal and confinement lasted in excess of two hours, during which these defendants, in particular [the Petitioner] and Mr. Page, repeatedly ordered these victims not to move or talk or that they would blow their heads off.

The defendants eventually fled out the bedroom door onto a patio, a deck area, and through an obscured patio door onto the ground and into a waiting car.

At approximately 4:04 a.m. that same morning at a SunTrust Bank on Cedar Bluff road, Mr. Nolan is observed on a security camera using the victim's ATM card to withdraw $500.00. The cameras also captured the presence of two other individuals in the car.

Using these pictures, Damien Nolan was identified by witnesses as the driver of the car and the person that used the ATM card to withdraw this money.

Mr. Nolan gave the names of Shavon Page and [the Petitioner] as two individuals with whom he had been that night.

The car driven by Mr. Nolan was later searched pursuant to the search warrant and a ring belonging to Tammy Price was found inside the glove compartment.

On June 5th, 2007, a heart shaped pendant belonging to Ms. Price was recovered from Charlie's Pawn Shop on Kingston Pike. She later positively identified that item as belonging to her, and one of the items that was taken during this home invasion.

DNA samples eventually were collected from all three of the defendants, and compared against the evidence obtained during the processing of the crime scenes, specifically the rug area where Tammy Price was able to spit out the substance in her mouth onto the rug, there was blood on that rug that came back to Mr. Price from where he had been hit in the head and cut and bled on that rug. There was semen evidence from [the Petitioner] and Mr. Page isolated from the examination of the rug and bed sheet in the floor also.

The swabs indicated the sperm of Mr. Page and [the Petitioner] in these samples from the rug and the sheets. And that DNA sample matched Page and [the Petitioner] to the conclusion [sic] of anyone else in the world.

The defendants were later taken into custody. A brief interview was had with Mr. Page, he acknowledged receiving $160.00 of the $500.00 taken from the use of the debit card but denied any other involvement in this home invasion.

[The Petitioner] did not give a statement to the police.

At the plea submission hearing, the Petitioner and Shavon Page ("co-defendant Page") denied taking any medications or drugs within the previous forty-eight hours that would affect their understanding of the proceedings. The Petitioner agreed that he understood that by pleading guilty, he was giving up his right to a jury trial, to confront and cross-examine the State's witnesses, and to "remain silent" at trial. He also agreed that he was entering into his plea freely, voluntarily, and knowingly; that no one had threatened him or promised him

anything to bring about his plea; and that he was satisfied with his attorney's representation. The trial court entered judgment against the Petitioner, sentencing him to twenty-five years at 100% and ordering restitution of $5,000.

The Petitioner filed for post-conviction relief alleging ineffective assistance of counsel and asserting that his plea was constitutionally invalid. Among his specific bases for relief, he argued that his initial attorney representing him in juvenile proceedings failed to "offer evidence at the transfer hearing that [the Petitioner] was committable to a mental health facility" and that his counsel during the plea process ("trial counsel") was ineffective in failing to pursue diminished capacity as a possible defense. The post-conviction court conducted a hearing on August 24, 2010, but the transcript of that hearing was not included in the record on appeal. According to the post-conviction court's written order, at the conclusion of the hearing, the Petitioner requested permission to submit a written final argument. The Petitioner filed the written argument, but the post-conviction court never ruled on the Petitioner's petition. On January 27, 2012, the post-conviction court held a hearing regarding the post-conviction petitions filed by the Petitioner's co-defendants. At that hearing, the Petitioner moved to amend his petition to include the following grounds for relief: that his plea was constitutionally invalid because the trial court failed to advise him at his plea submission hearing that, as a consequence of his plea, he would be subject to community supervision for life; and that trial counsel was ineffective in failing to advise him of this requirement. The post-conviction court allowed the Petitioner to amend his petition.

The Petitioner then proceeded with his proof and introduced the transcript of the plea submission hearing into evidence. He presented no further proof but requested the opportunity for rebuttal evidence. The State called Bruce Poston, trial counsel for co-defendant Page. Poston testified that he met with co-defendant Page as well as the Petitioner and trial counsel prior to them entering their pleas. As part of those discussions, he remembered discussing with co-defendant Page that if he "were on the list for the violent sexual offense [he was] going to be supervised for the rest of [his] life." When asked if he were present when trial counsel advised the Petitioner of the same thing, Poston responded, "I know [trial counsel] came to me and we went through it in depth because I advised him, make sure that your client knows this because they're going to be supervised forever." The trial court asked Poston if he and trial counsel had conversations as to the consequences of the plea deal. Poston answered, "Absolutely. He had – I wanted to make sure that he was absolutely aware. And that's why I said that in the courtroom that it was community supervision for life because this wasn't one of the cases that was in question. This was a violent sex crime and that had to be on the record."

On cross-examination, the Petitioner's counsel ("post-conviction counsel") asked Poston if he was present when trial counsel informed the Petitioner about community supervision for life, to which Poston responded, "I can't remember being present but he kept

– this was an issue he wanted to absolutely button down, that's why he kept coming to me and he was meeting with his client because he was talking to his client about the deal as I was talking to mine." However, he acknowledged that he could not say with certainty that trial counsel had the discussion with the Petitioner. When asked about the difference in community supervision for life and placement on the sex offender registry, Poston stated,

> I think that the only way to get on the violent sex offender registry, as a violent offender, is to be subject to community supervision for life. They're the same. And so when you – whether you use the words community supervision for life or violent sex offense registry, you're going to be subject to the same requirements.

The State next called trial counsel to testify. Trial counsel stated that he represented the Petitioner at the trial level through the submission of his plea. He remembered explaining to the Petitioner the offer made by the State, including the provision of community supervision for life. Additionally, he confirmed that the Petitioner seemed to understand the offer, including the consequences of his plea. Trial counsel was present at the time of the Petitioner's plea submission hearing, and he recalled that someone at the hearing announced as to both the Petitioner and co-defendant Page that they would be receiving community supervision for life. However, he did not recall that it was Poston who said it. He also confirmed that he advised the Petitioner of the community supervision for life requirement. Therefore, he did not think it was possible that the Petitioner was not aware of the requirement because "it was stated by [trial counsel] and it was stated in open court." He believed it was in the best interest of the Petitioner to accept the twenty-five-year plea agreement.

On cross-examination, trial counsel testified, "I had a number of meetings with [the Petitioner] and he seemed to be pretty – he was level headed, I guess, he was – in terms of what he was going to do. He wasn't jumping into anything." Post-conviction counsel approached trial counsel and presented him with a copy of the plea agreement. Trial counsel acknowledged that nowhere on the plea agreement was a provision regarding community supervision for life. He stated the he typically did not include the provision on plea agreements but routinely "ma[d]e sure [to] discuss it with [his] clients." Trial counsel acknowledged that community supervision for life is "much more intense supervision" than the requirement regarding the sex offender registry.

The Petitioner testified that he understood that, as part of his plea agreement, he would be required to serve 100% of his sentence. He denied, however, that trial counsel informed him that he would be subject to community supervision for life or required to register as a sex offender as part of his sentence. He remembered Poston mentioning "something about it" at the plea submission hearing. Post-conviction counsel asked the Petitioner if knowing

-6-

about this additional provision of his sentence would have changed his decision to enter into the plea agreement, and the Petitioner responded, "I can't say. I don't know." He confirmed, however, that such knowledge would have made a difference in his decision-making.

On cross-examination, the Petitioner agreed that he did not want this case to go to trial "[d]ue to the evidence they had against [him]." He understood that he faced the possibility of spending the rest of his life in prison and he agreed that his main concern during the plea process was the length of his sentence. The Petitioner acknowledged that community supervision for life was included on his judgment sheets for his aggravated rape convictions, but he denied seeing the judgment sheets until sometime within the past few months.

On redirect examination, the Petitioner denied that he would have agreed to twenty-five years at 100% if he had known that he would be subject to community supervision for life. He agreed that his mother had been charged with theft for pawning a pendant stolen from the victims in this case. Furthermore, he acknowledged that, as part of his plea agreement, if he pleaded guilty, related charges previously filed against his mother would be dropped and that this fact was part of his consideration in pleading guilty.

At the conclusion of the post-conviction hearing, the post-conviction court stated that the issue of the Petitioner's knowledge that he would be subject to community supervision for life hinged on its credibility finding. In assessing the credibility of trial counsel and the Petitioner, the post-conviction court accepted the testimony of trial counsel that trial counsel "discussed extensively" with the Petitioner the community supervision for life requirement. The court also noted that the Petitioner "was ambivalent on the issue of whether or not he would have taken the deal if he had known about the community supervision," even though it noted that later the Petitioner "said more clearly that he would not have entered the plea if he had known about supervision." Accordingly, the post-conviction court denied relief as to this issue.

In its written order, the court found that the Petitioner's mental evaluation "raised no red flag or warning as to the [P]etitioner's capacity to form the mental state requisite to the commission of the offenses of which he was accused." Furthermore, the court found that the statements by the Petitioner's mother to trial counsel that the Petitioner "was doing poorly in school, associating with the wrong people, and losing his temper" would not raise an indication of the Petitioner's mental incapacity. Rather, the court found that all the evidence related solely to the Petitioner's personality. Thus, the court found that the Petitioner failed to establish facts by clear and convincing evidence that his counsel in the juvenile proceedings and trial counsel were deficient in this respect. Accordingly, the post-conviction court denied the Petitioner relief. The Petitioner timely appealed, arguing that his plea was constitutionally invalid and that he received ineffective assistance of counsel.

## Analysis

*Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Validity of the Plea*

The Petitioner asserts on appeal that his plea was constitutionally invalid. In his appellate brief, he argues that, under Ward v. State, 315 S.W.3d 461, 476 (Tenn. 2010), the trial court erred by not advising the Petitioner "of the lifetime supervision consequence of his guilty plea." The State responds that, if such an error occurred, any error would be harmless because trial counsel informed the Petitioner of this requirement. Alternatively, the State contends that the Ward requirement placed upon trial courts does not apply retroactively.

To be valid, a plea must be entered knowingly, voluntarily, and intelligently. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977), superseded on other grounds by Tenn. R. of Crim. P. 37(b) and Tenn. R. of App. P. 3(b). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Boykin, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty, Jaco v. State, 120 S.W.3d 828, 831 (Tenn. 2003) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In Mackey, 553 S.W.2d at 341, our supreme court set forth the procedure that a trial court should follow when accepting a plea in order to ensure that a defendant's plea is knowing, voluntary, and

intelligent. See also Tenn. R. Crim. P. 11(b). A trial court must "substantially" comply with this procedure. State v. Newsome, 778 S.W.2d 34, 38 (Tenn. 1989).

Initially, we note that the State's argument regarding the retroactivity of Ward is misplaced in the present case. Here, the Petitioner filed for post-conviction relief on December 2, 2009. According to discussion among the post-conviction court, the State, and post-conviction counsel at the post-conviction hearing on January 27, 2012, the Petitioner's initial post-conviction hearing was held on August 24, 2010. At the conclusion of that hearing on August 24, 2010, post-conviction counsel requested to submit her argument in writing, which she submitted September 22, 2010. The post-conviction court never ruled on the petition, and on January 30, 2012, post-conviction counsel moved to amend the Petitioner's petition to include the additional grounds that his plea was constitutionally invalid because the trial court failed to advise the Petitioner regarding the community supervision for life requirement as a consequence of his plea and that trial counsel was ineffective in failing to advise him of this requirement as well. Thus, the Petitioner's amended petition related back in time to the original petition because the post-conviction court had not yet ruled on the original petition, and the original petition was timely filed. Therefore, the amended petition was not a re-opening of post-conviction relief, nor was it a petition filed after the statute of limitations governing post-conviction petitions had expired.[1] Thus, we need not determine whether Ward applies retroactively for purposes of this appeal.

In Ward, our supreme court distinguished between the sexual offender registry and community supervision for life, considering the former a "remedial and regulatory measure," and, thus, a "collateral consequence," while the latter is "punitive" and, thus, a "direct consequence." 315 S.W.3d at 469, 472, and 476. Therefore, with regard to the community supervision for life requirement, "trial courts have an affirmative duty to ensure that a defendant is informed and aware of the lifetime supervision requirement prior to accepting a guilty plea." Id. at 476. When a trial court fails to inform the defendant of this requirement, "the trial court has committed constitutional error." Id. Accordingly, "the judgment of conviction must be set aside unless the State proves that the error was harmless beyond a reasonable doubt." Id. (citing State v. Neal, 810 S.W.2d 131, 138-40 (Tenn. 1991), overruled in part on other grounds by Blankenship, 858 S.W.2d at 902).

In the present case, a review of the transcript of the guilty plea hearing indicates that the court, in fact, did not inform the Petitioner of his community supervision for life requirement. Therefore, the court committed constitutional error. Thus, we must assess whether the error was harmless beyond a reasonable doubt. See Ward, 315 S.W.3d at 476.

---

[1] This Court previously held that Ward does not apply retroactively under those circumstances. See Derrick Brandon Bush v. State, No. M2011-02133-CCA-R3-PC, 2012 WL 2308280, at *9 (Tenn. Crim. App. June 15, 2012), perm. app. granted (Tenn. Oct. 17, 2012).

In <u>Neal</u>, our supreme court stated that, "[i]f it can be shown that defendant already knew what he was not advised, . . . the harmless nature of the error is classic." 810 S.W.2d at 139. Accordingly, we must determine whether the State proved that the Petitioner was aware of this requirement.

At the post-conviction hearing, trial counsel testified that he advised the Petitioner of the community supervision for life requirement. Although he did not include that provision in the plea agreement, he stated that he typically did not include it in the agreement but routinely "ma[d]e sure [to] discuss it with [his] clients." Additionally, Bruce Poston, counsel for co-defendant Page, testified that he advised his client regarding the community supervision for life requirement. When asked if he were present when trial counsel advised the Petitioner of the same thing, Poston responded, "I know [trial counsel] came to me and we went through it in depth because I advised him, make sure that your client knows this because they're going to be supervised forever." On cross-examination, the Petitioner's counsel asked Poston if he was present when trial counsel informed the Petitioner about community supervision for life, to which Poston responded, "I can't remember being present but he kept – this was an issue he wanted to absolutely button down, that's why he kept coming to me and he was meeting with his client because he was talking to his client about the deal as I was talking to mine."

Thus, while the Petitioner denied at the post-conviction hearing ever having been informed of the community supervision for life requirement, the proof is to the contrary. Most significantly, we note that the post-conviction court accredited the testimony of trial counsel that he, indeed, had discussed the community supervision for life requirement with the Petitioner before the entry of the plea. Moreover, the testimony provided by Poston, coupled with the testimony that the requirement of community supervision for life was referenced by one of the attorneys at the plea submission hearing, weighs heavily against the Petitioner. Accordingly, we conclude that the proof does establish that the trial court's error is harmless beyond a reasonable doubt. Therefore, the Petitioner is not entitled to post-conviction relief on this basis.

*Ineffective Assistance of Counsel*

The Petitioner also asserts that he was denied effective assistance of counsel. The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[2] Both the United States Supreme Court and the Tennessee Supreme Court have recognized

---

[2] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. <u>See</u> <u>Gideon v. Wainwright</u>, 372 U.S. 335, 342 (1963); <u>State v. Howell</u>, 868 S.W.2d 238, 251 (Tenn. 1993).

that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688). Our supreme court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation."

-11-

Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

<u>Mental Competence of the Petitioner</u>

The Petitioner's first ineffective assistance of counsel claim is that trial counsel should have been "on notice" that the Petitioner "suffered from a mental disease or defect at the time of the incident and/or at the time of his plea and that further psychological testing was necessary." The State responds that the Petitioner has failed to establish deficient performance in this regard. In its written order, the post-conviction court found that the Petitioner's mental evaluation "raised no red flag or warning as to the [P]etitioner's capacity to form the mental state requisite to the commission of the offenses of which he was accused." Furthermore, the court found that the statements by the Petitioner's mother to trial counsel that the Petitioner "was doing poorly in school, associating with the wrong people, and losing his temper" would not raise an indication of the Petitioner's mental incapacity. Thus, the court found that the Petitioner's counsel in the juvenile proceedings and trial counsel were not deficient in this respect.

We agree with the post-conviction court as to the lack of significance of this proof. Moreover, the Petitioner has failed to include the transcript from his initial post-conviction hearing, which apparently was when the Petitioner submitted proof regarding this issue. The appellant must provide a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." State v. Ballard, 855 S.W.2d 557, 560–61 (Tenn. 1993). In such cases, we must presume that the trial court ruled

correctly. State v. Ivy, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993); State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Thus, the record provided by the Petitioner on this issue does not provide this Court with an appropriate foundation for review. Consequently, he is not entitled to relief on this issue.

## Advice to Accept Plea Offer

The Petitioner next avers that trial counsel "was ineffective in advising [the Petitioner] to accept the State's plea offer and plead guilty to multiple means of committing the same offenses." The Petitioner did not raise this issue in his original or amended petition for post-conviction relief. We are unsure whether he raised this issue in his initial hearing because, once again, he failed to include that transcript in the record on appeal. Moreover, the post-conviction court did not address this issue in its order denying relief, so we must assume that the Petitioner failed to raise the issue at his post-conviction hearing. Accordingly, this issue is waived. See Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal.").

## Community Supervision for Life

Finally, the Petitioner argues that trial counsel "was ineffective in failing to advise [the Petitioner] that as a consequence of his plea to aggravated rape, he would be subject to community supervision for life." The state responds that the Petitioner has failed to establish deficient performance. We agree.

Turning to the deficiency prong, as discussed above, trial counsel testified that he advised the Petitioner of the community supervision for life requirement. Additionally, Bruce Poston, counsel for the Petitioner's co-defendant, testified that he advised his client regarding the community supervision for life requirement. The post-conviction court accredited trial counsel's testimony over that of the Petitioner that trial counsel informed the Petitioner about this requirement, and we will not disturb those credibility findings on appeal. See Momon, 18 S.W.3d at 156. Additionally, the testimony established that the community supervision for life requirement was mentioned by one of the attorneys during the plea submission hearing. Therefore, the Petitioner has failed to establish deficient performance on the part of trial counsel in this regard. Thus, we do not need to address the prejudice prong. See Goad, 938 S.W.2d at 370. Accordingly, the Petitioner is entitled to no relief on this basis.

**CONCLUSION**

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE