IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 12, 2016 Session

## DANIEL MUHAMMAD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 10-02631      James C. Beasley, Jr., Judge**
_____

**No. W2015-01923-CCA-R3-PC  -  Filed November 22, 2016**
_____

The Petitioner, Daniel Muhammad, appeals the denial of his petition for post-conviction relief in which he challenged his conviction of facilitation of aggravated arson and his sentence of twelve years in prison. On appeal, the Petitioner contends that he was denied his right to the effective assistance of counsel. We affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Anna R. Smith, Memphis, Tennessee, for the appellant, Daniel Muhammad.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Karen Cook-Twele, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Petitioner was indicted for aggravated arson, along with his co-defendant, Michael Taylor. The Petitioner was convicted of the lesser-included offense of facilitation to commit aggravated arson, and Mr. Taylor's trial resulted in a hung jury. The trial court sentenced the Petitioner to twelve years imprisonment as a Range II, multiple offender.

## Trial

The relevant facts underlying the Petitioner's conviction, as recited by this court from the Petitioner's direct appeal, are as follows:

On August 28, 2009, at around 3:00 p.m., Martha Gray and her family were visiting on the front porch of her house at 1523 Pillow Street. Ms. Gray's niece had gotten into an argument with Defendant and two others, and Ms. Gray heard Defendant say, "don't worry about it because we going to burn the mother f* * *er down."

At around 4:00 a.m. on the following day, Ms. Gray's son, Rickey Gray, awoke to the smell of smoke. He discovered a fire burning near the back door in the kitchen, and he woke up the rest of his family. Michael Robison, Ms. Gray's live-in boyfriend, testified that after Mr. Gray woke him and they went outside, he saw that the grass around the house was burning and the fire was coming through the walls around the front door. After the family escaped the fire, they saw three African American males running down the street away from the house. Ms. Gray yelled to the men, "I know y'all did this," and the men laughed. She saw them enter a duplex. She identified the men as Defendant, his co-defendant Michael Taylor, and "Mayne." A few minutes after the men went inside the duplex, they left and got into a white truck parked outside. Michael Taylor was driving the truck. On cross-examination, Ms. Gray testified that on the afternoon before the fire, Defendant and Mayne were talking to each other, and "Mayne" made the threat about burning down her house. On re-direct examination, Ms. Gray testified, "[t]here's no doubt in my mind. [Defendant] was out there with [Mayne] when they made the [threat]—it was him and the girl and Mayne."

Officer Michael Thomas arrived at the scene to conduct traffic control around the residence while the fire department was extinguishing the fire. While at the scene, Officer Thomas spoke to the victims, who gave a description of the individuals they saw running from the house and of the vehicle they were seen driving. Officer Thomas then saw Michael Taylor sitting in a white vehicle matching the description about one block from the fire. Officer Thomas detained Taylor. Taylor told Officer Thomas that he had not been to the residence where the fire occurred. Taylor's statement to Officer Thomas was unprompted.

Detective Ronald Weddle was called to investigate the fire at the victim's home. After speaking with Ms. Gray, Detective Weddle interviewed Defendant. Defendant gave contradictory statements about his whereabouts on the night of the fire. Defendant initially told Detective Weddle that he was not anywhere near the area of the fire, and Defendant denied any involvement in the fire. Defendant later told Detective Weddle that he was at a house down the street on the evening prior to the fire, and then left and went to his grandmother's house, where he stayed for the night. Defendant also told Detective Weddle that he learned from his sister that he was a suspect in the arson and that he drove by the location of the fire, but Defendant later stated that he did not drive by the house after the fire. On cross-examination, Detective Weddle testified that he did not check Defendant's alibi, nor did he take a written statement from Defendant because Defendant gave conflicting statements.

Detective Stephen Roach arrived at the scene after the fire was extinguished and after Defendant was taken into custody. Detective Roach interviewed Defendant's co-defendant, Michael Taylor, at the police station. Detective Roach testified that when he entered the interview room, he smelled "a strong odor" of fruit scented hand sanitizer and then discovered an empty bottle of hand sanitizer in Mr. Taylor's pocket. During the interview, Mr. Taylor denied any involvement in the fire. Detective Roach also took a statement from Ms. Gray. In her statement, Ms. Gray did not tell detectives that Defendant had made a threat the previous day about burning her house.

Anthony Arnold, a fire investigator with Memphis Fire Services, was called to the scene to investigate the fire. Investigators determined that two fires were set at the front and back doors, and a third fire was set in the middle of the house in the kitchen. The fires were started by an ignitable liquid that was used to accelerate the fire. The location of the fires at the doors indicated that they were "designed to hold occupants inside" the house, and the third fire was intended "to hasten the fire." Mr. Arnold testified that he had "[n]o doubt" that the fires were set intentionally.

*State v. Daniel Muhammad*, No. W2013-01395-CCA-R3-CD, 2014 WL 2902273, at *1-2 (Tenn. Crim. App. June 25, 2014), *perm. app. denied* (Tenn. Oct. 17, 2014).

The crux of the Petitioner's ineffective assistance of counsel claim involves trial counsel's handling of a jailhouse telephone call that the Petitioner made to some of the State's witnesses. The first mention in the record of the telephone call is from the pretrial

motions transcript, where the State stated that the Petitioner made a telephone call "to one of the victims" of the arson. Trial counsel did not respond to this statement.

During the cross-examination of Ms. Gray, trial counsel asked, "Now, when you gave the statement to the police, you never made mention of [the] phone call from Mr. Muhammad." This question was apparently not prompted by questions on direct-examination or by Ms. Gray's prior testimony. Ms. Gray responded to trial counsel's question that, after the arson, her nephew who was in jail with the Petitioner called to speak to her son, Mr. Gray. Although she did not speak to the Petitioner during the telephone call, she testified that the Petitioner had relayed a message to her that she should not go to court and "keep it street." She was unable to recall informing the police of the telephone call, even though it took place before she gave a written statement to the police.

Mr. Gray testified on direct examination that, prior to the Petitioner's preliminary hearing, Mr. Gray received a telephone call from his cousin, Ms. Gray's aforementioned nephew, who was in the same jail cell as the Petitioner. Trial counsel's objections and the trial court's bench conferences are as follows:

> [Mr. Gray:] Before that, one night we was at home and we got a phone call from my cousin and had told – my cousin, Maurice, he told us that he was in the cell with [the Petitioner] and he asked us –
>
> [Trial counsel:] Objection, your Honor. That's hearsay.
>
> THE COURT: Sustained.
>
> …
>
> (Bench conference commenced.)
>
> THE COURT: Is this [the Petitioner] saying something to him or saying something to his cousin?
>
> [The State:] He's saying something – his cousin is in jail cell with him and he puts him on speaker phone and [the Petitioner] tells him not to come to court, to keep it in the street.
>
> …

-4-

[The State:] The cousin is in jail and gives the telephone to [the Petitioner] and [the Petitioner] talks to the family.

[The State:] And [the Grays] have him on speaker phone and he hears [the Petitioner] say that.

…

[Trial counsel:] That would be a statement that [the Petitioner] made against interest and I'm just hearing about it for the first time today, your Honor.

[The State:] I told you about that several times.

…

The bench conference concluded, and the trial court excused the jury. During a jury-out hearing, the State questioned Mr. Gray as follows:

[The State:] All right, Rickey. If you would, tell the Judge about what – about how you heard what [the Petitioner] said and about what he said.

[Mr. Gray:] Well, it was a phone call from my cousin. … And he got on the telephone and he was telling us that he was in cell, the same cell with [the Petitioner], and that he wanted to speak to us. So when [the Petitioner] got on the telephone, he was telling us – well, we put it on speaker phone. So he was telling us – he said keep it street and don't come to court and like that.

…

[Trial counsel:] Your Honor, again, this is the first time I'm hearing about this statement. But further, I don't even know what keeping it street means. I don't know how that's an admission by party opponent.

[The State:] Well, think when keep it street is accompanied by don't come to court, it's pretty clear what it means, Judge. And under this attorney's questioning, Martha Gray said the same thing just yesterday and it's clearly party opponent admission.

[Trial counsel:] That was excluded. And again, your Honor, I'm going to have to reiterate this is my first time ever hearing about this. Ever.

…

[The State:] That's actually disingenuous, your Honor. I've told him several times about this statement and about every statement Muhammed has given.

…

THE COURT: … Well, I'm going to overrule the objection. I'm going to allow it in. It's been questioned and it came out. Actually it didn't come out on direct; it came out on cross about this phone call that [the Petitioner] made to [Ms. Gray's] son about keep the streets and don't go down there.…

After the conclusion of the jury-out hearing and during trial, Mr. Gray testified that he received a telephone call from his cousin, Maurice, who informed him that he was with the Petitioner in the jailhouse cell and that the Petitioner "wanted to speak to [them]." Mr. Gray testified that Mr. Gray's brother was also taking part in the conversation and that the Petitioner, while on speakerphone, told Mr. Gray's brother to "keep it street and don't come to court."

On cross-examination, Mr. Gray acknowledged that he was not certain of the identity of the person whom his cousin had put on the telephone. Mr. Gray testified that the person with whom he spoke did not mention the fire involved in the arson. He also testified that about nine or ten other people who were involved in an earlier shooting of Ms. Gray's home were also in jail at the time of the telephone call. Mr. Gray said that some members of the Matthews family were involved in the shooting and that "Mayne" is a member of the Matthews family.

At the hearing on the Petitioner's motion for a new trial, trial counsel argued that in addition to the hearsay objection concerning Mr. Gray's testimony, the best evidence rule should have applied to his testimony. Trial counsel explained that Mr. Gray's cousin, Maurice Gray, should have been called to testify as to the subject and dialogue of the telephone call. The trial court, however, rejected trial counsel's argument and ruled that Mr. Gray's testimony was proper, denying the motion for a new trial.

-6-

The Petitioner was found guilty of facilitation of aggravated arson and sentenced to twelve years as a Range II, multiple offender. This court affirmed the trial court's judgment on direct appeal. *See Daniel Muhammad*, 2014 WL 2902273, at *1. The Petitioner then filed a timely petition for post-conviction relief, alleging that trial counsel provided him with ineffective assistance.

## Post-Conviction Hearing

At the post-conviction hearing, the Petitioner testified that he did not make the telephone call, and he denied that he had never been a cellmate of Maurice Gray. The Petitioner explained that to make a telephone call at the jail, he was required to complete a form and use money from his account to pay for the call. He stated that inmates can only call those who are on their list and that he believed telephone calls from the jail are recorded. The Petitioner said that although it was possible for two people to be close to one another during a telephone call, the inmates were prohibited from doing so. He denied ever using a cellular phone while in jail.

On cross-examination, the Petitioner testified that he did not know Maurice Gray until he was in jail and that he was never in a cell with him. He also testified that it was not possible to make a three-way telephone call from the jail.

Trial counsel testified that he did not "receive any recorded telephone calls, any transcripts from telephone calls[,] or any telephone logs from the State." He also testified that he did not "receive any physical documentation indicating that the State intended to introduce 404(b) evidence about an alleged threat to intimidate witnesses." He said that he did not recall the State "attempt[ing] to charge [the Petitioner] with witness intimidation, despite it being a felony." Trial counsel did not recall receiving any written discovery regarding the telephone call and said the telephone call was not referenced in police statements provided to him.

Trial counsel testified that he would have requested an evidentiary hearing regarding the admissibility of evidence of the call had he been aware of the call and that he did not, in fact, request a hearing. He stated that during Ms. Gray's testimony about the telephone call, he did not ask for clarification from the State about her testimony and did not request jailhouse records about the nature of the call or a recording of the telephone call from the State. Trial counsel acknowledged that during Mr. Gray's testimony about the telephone call, the trial court sustained his hearsay objection as to the identity of the person making the threat and that he did not renew or raise further objections following his hearsay objection because he believed that the testimony would have been "stricken from the record."

On cross-examination, trial counsel testified that he attempted to impeach Ms. Gray's testimony by asking her why she did not report the telephone call in her statement to the police. He explained that he did not continue to question Ms. Gray about the telephone call because he did not want to draw unwanted attention to the matter and did not want to elicit unknown testimony. Trial counsel stated that while representing the Petitioner, his file was stolen from his vehicle, and he had to obtain a second copy of the discovery from the State. He maintained that he did not receive any information about the telephone call. Trial counsel said that he did not know how or whether jailhouse telephone calls were recorded.

The Assistant District Attorney at the Petitioner's trial testified that he learned of the telephone call during a pretrial hearing about one to two weeks before trial. He also testified that by that time, the records for jail telephone calls were no longer available because they are destroyed after one year. He explained that he does not normally request jailhouse telephone records for an arson case but rather for cases involving murder or rape. The prosecutor said that trial counsel "knew about [the telephone call] for at least a month before trial."

On cross-examination, the prosecutor testified that although he did not provide trial counsel with written documentation of the telephone call, he spoke with trial counsel about the call. He did not recall whether trial counsel asked for any other information regarding the call.

The post-conviction court found that the Petitioner did not carry his burden in showing that trial counsel's representation was deficient and denied his request for post-conviction relief. The post-conviction court found that the telephone call was properly admitted at trial. The court noted that trial counsel's car was broken into, that the Petitioner's discovery was taken from the vehicle, and that trial counsel asked for a continuance as a result of the lost file. The court found that trial counsel "had some knowledge of [the] telephone call due to the nature of the cross-examination of the witness." The court also found that trial counsel's cross-examination of Mr. Gray was "pretty extensive," that the court was "satisfied from the proof" that the Petitioner was linked to the telephone call, and that the jury was responsible for determining the weight of the proof against the Petitioner as related to the telephone call. The court noted that trial counsel had provided particularly good representation and that the Petitioner was convicted of the lesser-included offense of facilitation of aggravated arson, despite the proof being "pretty strong" against him.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel when trial counsel failed to (1) prevent the loss of the Petitioner's discovery, (2) investigate evidence pertaining to the telephone call from the jail, and (3) properly object to testimony about the call. The Petitioner specifically argues that trial counsel should have objected based upon authentication, the best evidence rule, and Tennessee Rule of Evidence 404(b); renewed his objections at trial; filed a motion to preserve the recording of the call; filed a motion in limine to exclude the call; and filed a motion for a mistrial following the admission of evidence of the call.

The State contends that many of the issues raised by the Petitioner are waived because the Petitioner failed to raise them in his initial or amended post-conviction petitions. An issue for review by this court must first be raised in the petition for post-conviction relief or amended petition. Tenn. Sup. Ct. R. 28 § 8(D)(4); *Long v. State*, 510 S.W.2d 83, 85 (Tenn. Crim. App. 1974); *Kevin Allen Gentry v. State*, No. E2013-00791-CCA-R3-PC, 2014 WL 1883701, at *10 (Tenn. Crim. App. May 12, 2014), *perm. app. denied* (Tenn. Nov. 20, 2014). The Petitioner did not raise as issues in his petition for post-conviction relief or amended petition that trial counsel should have objected based upon authentication, the best evidence rule, and Tennessee Rule of Evidence 404(b); renewed his objections at trial; filed a motion to preserve the recording of the call; filed a motion in limine to exclude the call; filed a motion for a mistrial following the admission of evidence of the call; or maintained effective control over the Petitioner's files. Accordingly, these issues are waived. As such, the only issues that we will review on this appeal are whether trial counsel adequately investigated details concerning the telephone call and whether trial counsel should have objected to the admission of testimony about the call based upon the best evidence rule.

To obtain post-conviction relief, the Petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). Legal issues and mixed issues of fact and law are reviewed de novo without any presumption of correctness. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).

The Post-Conviction Procedure Act provides relief when a conviction or sentence is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel, and the denial of the effective assistance of counsel is a proper ground for post-conviction relief. *Vaughn*, 202 S.W.3d at 115-16. The right to counsel "encompasses the right to 'reasonably effective'

assistance, that is, assistance 'within the range of competence demanded of attorneys in criminal cases.'" *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

To show that relief is warranted on a claim of ineffective assistance of counsel, the Petitioner must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007). Failure to show either deficiency or prejudice precludes relief. *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011). Deficiency can be shown by proving that counsel's acts or omissions were so serious that they fell outside an objective standard of reasonableness under prevailing professional norms. *Vaughn,* 202 S.W.3d at 116. "Upon our review of counsel's performance, 'we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time.'" *Finch*, 226 S.W.3d at 316 (quoting *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006)).

To establish prejudice, the Petitioner must show a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *Vaughn*, 202 S.W.3d at 116. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Honeycutt*, 54 S.W.3d 762, 768 (Tenn. 2001) (quoting *Strickland*, 466 U.S. at 694).

The Petitioner argues that trial counsel failed to adequately investigate the telephone call, claiming that trial counsel should have requested records from the jail pertaining to the telephone call and interviewed Maurice Gray about the telephone call. Although trial counsel testified that he did not know about the telephone call, the post-conviction court found that trial counsel was, in fact, aware of the telephone call before trial. It is unclear from the prosecutor's testimony exactly when trial counsel became aware of the telephone call, but we note it was at least two weeks before trial. Nevertheless, the post-conviction court also found that trial counsel highlighted issues concerning the telephone call testimony, characterizing trial counsel's cross-examination of Mr. Gray as "pretty extensive." The record shows that trial counsel worked to impeach Ms. Gray's testimony about the telephone call by highlighting her lack of personal knowledge of the identity of the person who made the threat during the telephone call. Additionally, the prosecutor testified that by the time either the State or trial counsel knew about the telephone call, any recording or record of the call would have been destroyed according to the jail's policy regarding maintaining telephone call records. Trial counsel would not have had access to the telephone call itself. At the hearing, the Petitioner testified that he did not make the telephone call, but he did not introduce any evidence regarding what a more thorough investigation of the telephone call would have uncovered. Even if trial counsel was deficient by not interviewing

Maurice Gray, Maurice Gray did not testify during the post-conviction hearing. Thus, the petitioner cannot establish prejudice. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing.").

The Petitioner also argues that trial counsel's failure to argue a best evidence objection relating to testimony about the telephone call constitutes ineffective assistance of counsel. Rule 1002 of the Tennessee Rules of Evidence states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required …." The Petitioner contends that the phone call testimony would have been excluded if trial counsel lodged a best evidence objection because a recording of the call itself would have been the best evidence. The prosecutor testified, however, that by the time the State learned of the telephone call, the recording was already destroyed according to the jail's policy for maintaining telephone call recordings. The unavailability of a recording does not render testimony about the telephone call inadmissible under the best evidence rule. "The best evidence rule is a rule of preference rather than exclusion. It 'does not exclude evidence but rather requires the introduction of the best available form of the evidence.'" *Iloube v. Cain*, 397 S.W.3d 597, 602 (Tenn. Ct. App. 2012) (internal citations omitted). Because an objection based on the best evidence rule would not have resulted in exclusion of the testimony, the Petitioner has failed to establish that trial counsel was deficient in failing to object on this basis. Further, trial counsel testified that he strategically did not object further to the telephone call testimony by Ms. Gray and Mr. Gray because he did not want to annoy the jury. *See Hellard v. State*, 629 S.W.3d 4, 12 (Tenn. 1982) (holding that an attorney's decision whether to object is a strategic one and does not necessarily subject an attorney to a finding that her representation was inadequate).

The post-conviction court found that the State's case against the Petitioner at trial was strong, noting surprise at a conviction of only a lesser-included offense. At trial, Ms. Gray testified that she heard the Petitioner threaten to burn her house down. On the night of the arson, the occupants of the house witnessed the Petitioner running away from the scene. Additionally, the Petitioner offered conflicting statements regarding his whereabouts at the time that the fire was set. We conclude that any deficiency did not result in prejudice in light of the strong evidence of guilt. Accordingly, the Petitioner is not entitled to post-conviction relief.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE