IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2025

**STATE OF TENNESSEE v. ALPHONSO ELEXANDER**

**Appeal from the Circuit Court for Rutherford County**
**No. 86588    Howard W. Wilson, Chancellor**

_____

**No. M2024-00983-CCA-R3-CD**

_____

After a bench trial, the Defendant, Alphonso Elexander, was convicted in the Rutherford County Circuit Court of aggravated burglary, misdemeanor vandalism, and possession of drug paraphernalia and received an effective six-year sentence to be served in confinement. On appeal, he claims that the evidence is insufficient to support his aggravated burglary conviction. Based upon our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Dustin Faeder (on appeal), Brentwood, Tennessee, and Caleb McCain (at trial), Murfreesboro, Tennessee, for the appellant, Alphonso Elexander.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Sarah Davis and Jake Dagostino, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In January 2022, the Rutherford County Grand Jury returned a multi-count indictment against the Defendant, charging him with vandalism, a Class A misdemeanor, in count one; aggravated burglary, a Class C felony, in count two; and possession of drug paraphernalia, a Class A misdemeanor, in count three. The grand jury also charged him with three counts of violating Tennessee's sex offender registry, a Class E felony: count four, failing to possess photo identification on his person in violation of Tennessee Code Annotated section 40-39-213(a); count five, knowingly establishing a primary or

secondary residence or other living accommodation or accepting employment within one thousand feet of any public, private, or parochial school, licensed day care center, other child care facility, public park, playground, recreation center, or public athletic field, in violation of Tennessee Code Annotated section 40-39-211; and count six, failing to register or report in person to the designated law enforcement agency within forty-eight hours of establishing or changing a primary residence, establishing a physical presence at a particular location, or becoming employed or practicing a vocation or becoming a student in this state in violation of Tennessee Code Annotated section 40-39-203. Prior to trial, the State nolle prosequied counts four through six.

On January 23, 2023, the State filed a notice of prior felony convictions for sentencing enhancement purposes. According to the notice, the Defendant was convicted of rape pursuant to General Court Martial in the United States Army in May 1998; violating sex offender registry requirements in Bexar County, Texas, in July 2013; and violating Tennessee's sex offender registry requirements in Rutherford County in October 2019.

On May 22, 2023, the Defendant waived his right to a jury trial and proceeded to a bench trial on the charges for aggravated burglary, vandalism, and possession of drug paraphernalia in the first three counts of the indictment. Prior to the first witness's testimony, the State introduced certified copies of the Defendant's 1998 rape conviction and his sex offender registry paperwork, which he signed in 2019 and 2021, acknowledging that he read and understood the requirements of Tennessee's sex offender registry.

Robert Greenberg testified that he was a physician and moved to Rutherford County in 2003. In December 2020, he bought an old house in Murfreesboro on N. Maney Avenue. He did not live in the house but slept there occasionally if he was working as the physician on call and needed a place to sleep. He said he had an air mattress, blankets, pillows, towels, toiletries, and "all different types of furniture, clothes, artwork, plates, [and] cutlery" in the house. The house had heat, water, and electricity, and Dr. Greenberg and his wife were planning to "rehab it and build on."

Dr. Greenberg testified that on September 6, 2021, he received a telephone call from a neighbor on N. Maney Avenue, telling him that "people were going in and out of the back door of [his] house with garbage bags filled with stuff" and that they were taking their bicycles inside the house. Dr. Greenberg or his wife telephoned the police, and Dr. Greenberg drove to the house. When he arrived, he saw the police taking the Defendant out of his house. Dr. Greenberg observed that a new lock had been installed on the back door, and the previous lock and the receipt for the new lock were on the floor. Dr. Greenberg said that the inside of the house was "a mess" and "looked like a drug den" and that his air mattress "was obviously being used." A woman's clothing and shoes were in the front room, and "[i]t did not look like somebody had just been there a day." Dr.

Greenberg said he was "nervous" to clean up the house because he "didn't want to get cut with needles and stuff." Therefore, he ended up having the house torn down. He said that he did not know the Defendant, that he had not seen the Defendant prior to September 6, 2021, and that the Defendant did not have permission to live in his house.

Dr. Greenberg testified that in April 2022, he received a letter at the house on N. Maney Avenue. The Defendant had sent the letter from the Rutherford County Jail and had addressed it to a woman who the police had also removed from Dr. Greenberg's house on September 6, 2021. In the letter, the Defendant told the woman that he owned the house and that he was going to "evict that guy squatting on [his] property." Dr. Greenberg said the letter frightened him because the Defendant "knows who I am, and he thinks it's his house." On cross-examination, Dr. Greenberg acknowledged that the Defendant never contacted him directly.

Robert Oeding, an officer with the Murfreesboro Police Department ("MPD"), testified that on September 6, 2021, he responded to a burglary-in-progress call at a house on N. Maney Avenue. He went to the rear of the house and made contact with the Defendant, who was exiting the back door. Officer Oeding detained the Defendant, and other officers detained three additional individuals. The Defendant told Officer Oeding that the house belonged to him and that he had been staying there. The Defendant had keys to the back door, and the keys fit the lock on the door. However, Officer Oeding noticed that the doorknob had been removed and that a deadbolt had been installed in a new hole that had been cut into the door.

Officer Oeding testified that he searched the Defendant incident to arrest and found a glass pipe with white residue. Based on Officer Oeding's experience, he thought the pipe had been used to smoke methamphetamine. He went into the house and saw "a lot of trash and stuff everywhere." A backpack was also found in the house, and Officer Oeding said he thought the Defendant claimed ownership of the backpack.

Officer Oeding testified that he investigated the Defendant, who was a registered sex offender, and learned the Defendant was prohibited from living within one thousand feet of a daycare or school. On August 3, 2021, Officer Oeding viewed a video recording of a meeting between the Defendant and Angelo Medina, who was responsible for overseeing the sex offender registry and was the Defendant's reporting officer. During the meeting, which the State played for the trial court, the Defendant told Mr. Medina that the Defendant needed to update his address to the house on N. Maney Avenue. Mr. Medina responded that the address was not compliant with sex offender registry requirements because the house was within five hundred feet of a daycare, meaning the Defendant would be in violation of the sex registry requirements if he lived there. After seeing the video, Officer Oeding charged the Defendant with violating the sex offender registry.

On cross-examination, Officer Oeding testified that the residue on the glass pipe was not tested. The police arrested the four people who were in the house and charged them with criminal trespass. The police also charged the Defendant and one other person with possession of drug paraphernalia.

Sergeant Stephen Luter of the MPD testified that he responded to a burglary call at a house on N. Maney Avenue on September 6, 2021, and that he was the first officer to arrive. He went to the front door and saw the Defendant inside the house. On cross-examination, Sergeant Luter testified that at least two people were inside the house.

The Defendant did not present any proof. During closing arguments, the State asserted that the Defendant entered the house with the intent to commit a felony, the felony being his intent to live there knowing that doing so was a violation of Tennessee's sex offender registry requirements. Defense counsel argued that the Defendant did not commit the underlying felony because retroactive application of the requirement that prohibited him from residing within one thousand feet of a daycare center violated ex post facto principles. The trial court found the Defendant guilty as charged in the indictment of aggravated burglary, possession of drug paraphernalia, and misdemeanor vandalism. After a sentencing hearing, the trial court sentenced him as a Range II, multiple offender to six years for the aggravated burglary conviction and to concurrent sentences of eleven months, twenty-nine days for the convictions of possession of drug paraphernalia and vandalism.

## ANALYSIS

On appeal, the Defendant contends that the evidence is insufficient to support his aggravated burglary conviction because retroactive application of the sex offender registry requirement that prohibits him from living within one thousand feet of a daycare center violates the Ex Post Facto Clause. The State argues that the evidence is sufficient. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). Thus, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

As charged in this case, "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation . . . with intent to commit a felony, theft, or assault[.]" Tenn. Code Ann. § 39-13-1002(a). Aggravated burglary is burglary of a habitation. *Id.* at § 39-13-1003(a)(1). "Habitation" is defined as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons[.]" *Id.* at §§ 39-13-1001(a), 14-401(1). The intent required for a burglary conviction may be inferred from many circumstances. *Bollin v. State*, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972).

In this case, the Defendant was indicted for aggravated burglary based on the underlying felony of the Defendant's violating the sex offender registry requirement that prohibits a sex offender from residing within one thousand feet of a school or daycare. The Tennessee Legislature enacted the state's sex offender registry act, which created the state's sex offender registry, in 1994. *King v. State*, No. M2018-00572-COA-R3-CV, 2018 WL 5995701, at *1 (Tenn. Ct. App. Nov. 15, 2018); *see* 1994 Tenn. Pub. Acts, ch. 976. In 2004, the Legislature repealed and replaced the 1994 Act with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act. *King*, 2018 WL 5995701, at *1. In addition to requiring that sexual and violent sexual offenders provide law enforcement with regularly updated registration information, the 2004 Act provided that no sexual offender or violent sexual offender "shall knowingly reside or work within one thousand feet (1,000′) of the property on which any public school, private or parochial school, licensed day care center, or any other child care facility is located." Tenn.

Code Ann. § 40-39-211(a) (Supp. 2004). The 2004 Act has been amended numerous times but maintains geographic restrictions on registrants. *See Ward v. State*, 315 S.W.3d 461, 468 n.5 (Tenn. 2010) (listing multiple amendments to the 2004 Act). Currently, the Act provides:

> While mandated to comply with the requirements of this chapter, no sexual offender, as defined in § 40-39-202, or violent sexual offender as defined in § 40-39-202, shall knowingly establish a primary or secondary residence or any other living accommodation or knowingly accept employment within one thousand feet (1,000') of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center, or public athletic field available for use by the general public.

Tenn. Code Ann. § 40-39-211(a)(1).

In support of his claim that retroactive application of the sex offender registry act's geographic restrictions, as applied to him, violates ex post facto law, the Defendant relies on *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016); *Does #1-9 v. Lee*, 659 F. Supp. 3d 865 (M.D. Tenn.); and *Doe v. Lee*, 102 F. 4th 330 (6th Cir. 2024). In *Snyder*, the Sixth Circuit held that two amendments to Michigan's sex offender registry act, one of which prohibited registrants from living, working, or loitering within one thousand feet of a school, imposed punishment and that retroactive application of the amendments to the plaintiffs violated the federal Ex Post Facto Clause. 834 F.3d at 706. In *Does #1-9*, the district court concluded that in light of the Sixth Circuit's holding in *Snyder*, Tennessee's 2004 sex offender registry act also imposed retroactive criminal punishment in violation of ex post facto considerations. 659 F. Supp. 3d at 889. As a result, the district court enjoined the defendants from enforcing the entire sex offender registry act against the plaintiffs. *Id.* at 894. The State appealed, and the Sixth Circuit addressed the appeal in *Doe v. Lee*. The Sixth Circuit recalled its explicit holding in *Snyder* that retroactive application of the two Michigan amendments to the plaintiffs was unconstitutional and unenforceable. *Doe*, 102 F.4th at 338. The Sixth Circuit then concluded that analogous amendments in Tennessee's 2004 sex offender registry act could not be enforced retroactively against the plaintiffs but that the district court erred by enjoining enforcement of the entire act. *Id.* at 340-41. The Sixth Circuit remanded the case for the district court to determine the "potentially unconstitutional portions" of Tennessee's act. *Id.* at 341. That determination is currently pending in the district court.

The Defendant contends that "under clear, hot-off-the press 6th Circuit precedent, the 1000 foot from a school or childcare facility requirement is punitive and subject to Ex Post Facto protection." However, "this Court is not bound by the decisions of the federal

district and circuit courts of appeal. Rather, this Court is bound (1) to follow the decisions of the Tennessee Supreme Court, and (2) to follow the applicable constitutional rulings of the United States Supreme Court." *Thomas v. State*, No. W2008-01941-CCA-R3-PD, 2011 WL 675936, at *46 (Tenn. Crim. App. Feb. 23, 2011) (citing *see State v. McKay*, 680 S.W.2d 447, 450 (Tenn. 1984), *cert. denied*, 470 U.S. 1034 (1985); *State v. Green*, 995 S.W.2d 591, 600 (Tenn. Crim. App. 1998); *State v. Bowers*, 673 S.W.2d 887, 889 (Tenn. Crim. App. 1984)). As this court has noted since *Doe v. Lee*, "Our supreme court has held that [the sex offender registration act] does not violate the prohibition against ex post facto laws because 'requirements imposed by [the sex offender registration act] are nonpunitive[.]'" *State v. McDaniel*, No. E2024-00141-CCA-R3-CD, 2024 WL 4371120, at *3 (Tenn. Crim. App. Oct. 2, 2024) (quoting *Ward*, 315 S.W.3d at 469). Therefore, we are unable to conclude that the geographical residency restriction violates ex post facto law.

Taken in the light most favorable to the State, the evidence shows that on August 3, 2021, the Defendant's sex offender supervisor told him that living in the house on N. Maney Avenue would be a violation of the registry's requirements because the house was within five hundred feet of a daycare. Nevertheless, one month later, the police found the Defendant exiting the back door of the house. The Defendant told Officer Oeding that the house belonged to him and that he had been staying there. The Defendant's backpack was inside the house, and he possessed keys to a new deadbolt that had been installed on the back door. Thus, the evidence is sufficient to show that the Defendant entered the habitation with intent to knowingly reside within one thousand feet of a daycare center in violation of the sex offender registry act.

## CONCLUSION

Upon review, we affirm the judgments of the trial court.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE

- 7 -