IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2025

**STATE OF TENNESSEE v. KWAME D. CHIHOMBORI-QUAO**

**Appeal from the Criminal Court for Sumner County**
**No. 2023-354     Dee David Gay, Judge**

_____

**No. M2025-00229-CCA-R3-CD**

_____

Defendant, Kwame D. Chihombori-Quao, appeals from his guilty-pleaded convictions for four counts of statutory rape, for which he was sentenced to two years in confinement and six years on supervised probation. On appeal, he argues that the trial court erred by ordering him to register as a sex offender. Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Chad Turnbow (on appeal), Mt. Juliet, Tennessee, and Eric L. Phillips (at hearing), Lebanon, Tennessee, for the appellant, Kwame D. Chihombori-Quao.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Thomas Dean, District Attorney General; and Nathan S. Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from a sexual relationship between Defendant, who was twenty-nine years old at the time, and a seventeen-year-old girl ("the victim").[1] The July 2023 term of the Sumner County Grand Jury issued a twenty-one-count indictment charging Defendant with especially aggravated sexual exploitation of a minor (Counts 1-7); aggravated sexual exploitation of a minor (Counts 8-13); solicitation of a minor for especially aggravated sexual exploitation of a minor (Count 14); and seven counts of

_____

[1] It is the policy of this court to protect the privacy of minors and victims of sexual offenses by omitting their names from judicial opinions.

aggravated statutory rape (Counts 15-21).  *See* Tenn. Code Ann. §§ 39-13-506, -518; 39-17-1004, -1005.

On June 17, 2024, Defendant filed a "Petition for Acceptance of Plea," which reflected that he was pleading guilty in Counts 15-18 to statutory rape with agreed consecutive sentences of two years for each count.  One of the two-year sentences would be served in confinement, with the remaining six years suspended to supervised probation. Whether Defendant would be required to register as a sex offender was to be determined by the trial court.  The plea hearing transcript was not included in the record on appeal.

At the registration determination hearing, the trial court stated:

I have to confess[,] I don't know anything about this case.  There have been no memorandums, there's been . . . nothing submitted to me, and I'm kind of left out without any knowledge of the facts here.  I do note that [D]efendant pled guilty to four counts of statutory rape, receiving a two-year sentence on each.   And there were seven counts of especially aggravated sexual exploitation of a minor, six counts of aggravated sexual exploitation of a minor, solicitation of a minor for especially aggravated solicitation of a minor, and seven counts of [aggravated] statutory rape.  I have looked through the juvenile files and this was a subpoena that was issued on the victim.

Defense counsel noted that the parties had stipulated to the entry of an affidavit from the victim and passed it to the trial court.  Although the affidavit was not exhibited to the hearing, it was included in the technical record on appeal.  In the affidavit, the victim stated that she did not think that Defendant should be on the sex offender registry because she had never been afraid of Defendant and did not believe he was a "rapist."  She said that their sexual activity was consensual; that she had previous sexual relationships with "older people" before dating Defendant; that filming and selling sexually explicit videos was her idea and "purely for [her] financial benefit"; and that Defendant did not receive any money from the sales.  The victim also stated her belief that she was "mature enough to make the decision to have sex with [Defendant]" because she began working at age fifteen to support herself, later dropped out of school and worked full time, and became a manager at Dollar General.  The victim stated that she "generally spent [her] time [with] people who were older" and "never did things that younger people do[.]"

Defense counsel stated that it was "undisputed" that the victim was seventeen "and-a-half" years old and that sexual videos were "made . . . [and] sold on social media." Defense counsel also noted that, "as the State's aware, this is something that she did on a regular basis.  There was a very clear pattern here of having sex with older men and then

selling those things." Defense counsel argued that Defendant's behavior was not "predatory" and that Defendant's relationship with the victim ended "very shortly" after he learned her age. Defense counsel stated that Defendant "was not the one producing these videos" and did not sell or profit from them. Defense counsel noted that Defendant had served about thirteen months in jail and was "doing well on probation."

Upon examination by the trial court, defense counsel acknowledged that Defendant possessed the videos and that some of the videos or photographs the victim sold were on Defendant's phone. Defense counsel noted that "there was some question [about] whether his phone was opened up after it was seized and whether that was going to be admissible."

The State argued that Defendant should be required to register as a sex offender because he was twelve years older than the victim, who was "a troubled youth . . . trying to straighten her life out now." The State noted that Defendant knowingly and voluntarily participated in the relationship. The State further noted that the case was settled due to the victim's "reluctance to participate in a prosecution[.]"

The trial court reiterated that it "just learned enough [at the plea hearing] to accept the guilty plea" and stated that it needed more information to determine the registration issue. When the trial court asked for an offer of proof or a summary of the investigation, the State responded, "I mean, I can do that, if they're okay with that, and they'll have their version of events, I'm sure. But we're basically having a trial here at this point if we do it that way[.]"

The State then discussed with the trial court the requirements of the sex offender registry, and defense counsel interjected that it was "incredibly hard to meet the standard" of the registry, including limits to social media applications on a person's cell phone. Defense counsel noted that it had not been alleged that Defendant used social media to perpetrate the offenses.[2] The trial court responded, "But he was using his phone for child pornography."

The trial court continued, "What we'll do then, General, if you'll make an offer of proof. And, [defense counsel] . . . if you'll make an offer of proof. And then I'll hear arguments here." The State provided the following factual summary:

> The victim, a 17-year-old . . . female who resides with her mother in Sumner County, she became acquainted with [D]efendant at a basketball court and the two struck up a friendship which eventually became sexual.

---

[2] Based upon the victim's affidavit, which stated, "The videos were sold through my social media," we glean that defense counsel meant that Defendant did not use his social media accounts to sell the videos.

On or about May 28, 2023, Sumner County deputies were dispatched to a residence in Bethpage in reference to an injured female who came to the residence claiming she had been pushed from a vehicle. When deputies and EMS arrived . . . [the victim] was taken to the ER.

. . . .

Her parents were contacted and . . . told the deputies that the victim had been out that evening with her boyfriend . . . Pat, . . . but they did not know his last name. They described Pat as a taller black male of an unknown age who resided in a mansion in Gallatin.

Eventually the deputies were able to ascertain the identity of Pat who was [D]efendant.

. . . .

Detective Byington was assigned to investigate the incident and seized both [D]efendant and the victim's phones. On the phones she found numerous videos and pictures of the victim and [D]efendant engaged in sexual intercourse and performing other sexual acts. All of the videos and pictures were embedded with data which indicates they were made at [D]efendant's home in Gallatin.

During the course of the investigation it was learned that in addition to making the pornographic photographs . . . , [the victim] and [D]efendant were selling the videos and pictures . . . to individuals on the internet . . . via various social media platforms. Additionally, they were allowing men to come to [D]efendant's home and film hi[s] and [the victim's] sexual encounters.[3]

. . . .

The victim participated in a forensic interview . . . During the interview she was quite forthcoming about her relationship with [D]efendant and confirmed that what Detective Byington found on the phones was accurate. She stated she knew how old he was[,] though he had told her

---

[3] The prosecutor initially stated that Defendant filmed the victim while she was having sex with other men. Defense counsel objected, and later the prosecutor corrected himself and clarified that other men filmed the encounters, not Defendant.

- 4 -

various different ages. And she did not feel as though she was raped. She said she was selling sexually explicit videos before she met him and that she did not want him to get in any trouble.

. . . .

We've reviewed numerous Snapchat and text messages between the two and believe they show that he clearly knew her age. Further, their relationship appeared based almost entirely on sex, selling videos of their sexual encounters to others, and the consumption of narcotics and alcohol.

Defense counsel stated that the victim spoke with him at his office and that she was "a troubled young lady who has a history of calling people, having sex with them, sending [sic] the videos. She hangs out with older men." Defense counsel averred that Defendant was "caught up in her planned calculated use of cell phone devices. He's not the one videotaping these." Defense counsel acknowledged that Defendant knew about the filming, although he asserted that Defendant only learned about the sale of the videos "afterwards[.]"

Defense counsel argued that "it's a legal fiction to say somebody's 17 years old and a half and doesn't know what she's doing" and that Defendant's being required to register as a sex offender would "destroy[] the rest of his life[.]" Defense counsel submitted that Defendant's eight-year sentence "accounted for" his role in the offenses and that he was "doing the time."

The trial court remarked:

She's 17 years old. How are we going to protect children? It doesn't matter if they're involved in sexual activity or not, but . . . it looks like she came around and she had all kind[s] of issues, all kind[s] of problems. [Defendant] didn't try to help her. He led her on and led her into further darkness. Why in the world should he not be put on the sex offender registry? I don't understand that.

It seems to me like we are in a society where there's no accountability. He is the one that's responsible. Now, until we cross that, I don't think there's anything to be said.

. . . .

- 5 -

[Y]ou have to draw a line at some age . . . . And until we make a distinction between minors and adults, in my opinion, it matters.

And this [D]efendant should have been mature enough, adult enough, had enough character and integrity to tell her to go her own way, or help her. I don't see any reason to not put this [D]efendant on the sex [offender] registry[.]

Following the hearing, the trial court issued a written order directing Defendant to register as a sex offender. In the order, the trial court stated that it had considered the parties' arguments, the victim's affidavit, and the facts and circumstances surrounding the offenses, "including those offenses for which [] Defendant was originally charged and whether the convictions in this case were the result of a plea bargain agreement."

Defendant timely appealed.

## Analysis

On appeal, Defendant contends that the trial court abused its discretion by ordering him to register as a sex offender "without allowing the parties to present the totality of the evidence intended to be presented[.]" Defendant notes that the trial court admitted to having "no prior knowledge" of the facts of the case and that, apart from the statements of counsel and the victim's affidavit, no evidence was presented at the hearing. Defendant avers that the trial court did not consider "all the facts and circumstances surrounding the offense[s]" and that the court erred by crediting the State's version of disputed facts "without admissible evidence."

Defendant pleaded guilty to four counts of statutory rape, a Class E felony. Tennessee Code Annotated section 39-13-506(d)(2)(B) provides:

In addition to the punishment provided for a person who commits statutory rape for the first time, the trial judge may order, after taking into account the facts and circumstances surrounding the offense, including the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement, that the person be required to register as a sexual offender[.]

This court has held that the trial court must consider the facts and circumstances surrounding the offense and may also consider "any additional relevant factors" when making this determination. *State v. Broadrick*, 648 S.W.3d 158, 170 (Tenn. Crim. App.

2018). This court reviews a trial court's decision on sex offender registration for an abuse of discretion with a presumption of reasonableness. *Id.* at 169.

As a preliminary matter, the State argues that Defendant has waived consideration of this issue for failure to provide an adequate record—specifically, the transcript of the guilty plea hearing. The State asserts that, without the transcript, this court "has an incomplete picture of what facts the trial court knew at the time it ordered that [Defendant] be required to register." Defendant has not responded to the State's argument by filing a reply brief or by requesting to supplement the record.

The absence of the guilty plea submission hearing transcript is particularly important because

> [f]or those defendants who plead guilty, the guilty plea hearing is the equivalent of trial, in that it allows the State the opportunity to present the facts underlying the offense. For this reason, a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed.

*State v. Keen,* 996 S.W.2d 842, 843-44 (Tenn. Crim. App. 1999) (citations omitted).[4] As the appellant, Defendant bears the burden to prepare "a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993) (citing *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983)); *see* Tenn. R. App. P. 24(b) (stating that "the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"). "[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in [*State v. Bise*, 380 S.W.3d 682 (Tenn. 2012)]." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

We agree with the State that, without the plea hearing transcript, the record is inadequate for our review. In part, Defendant's argument relies on the assertion that the facts and circumstances of the case were in dispute, making the facts to which Defendant

---

[4] We note that, although sex offender registration is a collateral consequence of Defendant's plea and not part of the sentence, *see Ward v. State*, 315 S.W.3d 461, 472 (Tenn. 2010), this court has previously reviewed registration determinations by the same standard as sentencing issues. *See State v. Broadrick*, 648 S.W.3d 158, 168-69 (Tenn. Crim. App. 2018) (applying the *Bise* standard of review to sex offender registration determinations and analogizing to *State v. King*, 432 S.W.3d 316, 322-25 (Tenn. 2014), which held that *Bise* applies to the denial of judicial diversion).

stipulated at the plea hearing significant. In addition, whether the trial court considered the facts and circumstances of the case, as required by statute, hinges upon the court's understanding of the facts, including those forming the basis for the guilty plea. Accordingly, Defendant has waived his issue for failure to provide an adequate record. *See generally State v. Stack*, 682 S.W.3d 866, 876 (Tenn. Crim. App. 2023) (holding that this court was precluded from addressing the defendant's challenge to the validity of a probation condition when the defendant failed to include the guilty plea hearing transcript, "which provided the factual circumstances of the offense").

We briefly note, however, that the record before us would support the trial court's registration decision. Contrary to Defendant's assertion that the trial court did not allow the presentation of proof, neither[5] party requested to present witnesses or evidence other than the victim's affidavit. Although the trial court did not explicitly discuss the victim's affidavit, it discussed facts established in the affidavit that were not in dispute—that Defendant had a sexual relationship with the victim and that videos of their sexual activity were recorded and sold. Likewise, the trial court relied upon the age disparity between Defendant and the victim, which was established in the indictments and was not in dispute. Defendant is not entitled to relief.

## Conclusion

In light of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_s/ Robert L. Holloway, Jr._
ROBERT L. HOLLOWAY, JR., JUDGE

---

[5] Although defense counsel indicated at the beginning of the hearing that Defendant would call one witness, counsel did not ultimately do so.